McQUIDDY PRINTING CO. v. HIRSIG et al.—134 S. W. (2d), 197.

Middle Section.    June 9, 1939.

Petition for Certiorari denied by Supreme Court, December 16, 1939.

Noah W. Cooper, of Nashville, for appellants Hirsig.

Farmer, Denney & Leftwich, of Nashville, for appellee McQuiddy Printing Co.

CROWNOVER, J.   The bill in this cause was filed by the McQuiddy Printing Company against Lawrence M. Hirsig and his two brothers, James W. Hirsig and William G. Hirsig, in equity by attachment of real estate and non-resident publication for Lawrence M. Hirsig, seeking to have the property devised to him by his mother applied to the satisfaction of the debt of $10,835.79, with interest, to the complainant McQuiddy Printing Company.

W. G. Hirsig, the father of the three defendants, died on April 4, 1925, leaving a will bequeathing and devising all his property to his wife, Mrs. Josephine Hirsig, the mother of the defendants Hirsig.

Mrs. Hirsig, between the years 1927 and 1932, turned over to her son Lawrence $21,988 to be used in his business ventures.

She died on June 17, 1932, leaving as her heirs-at-law her three sons, Lawrence, James and William, and leaving a will, which read, in part, as follows:

"Second, I give and bequeath to my beloved sister and children, hereinafter named, all my property, real and personal, which I may have at the time of my decease, and it is my desire that the division of my property may be as follows:

"To my son, William G. Hirsig, if living, I give and bequeath the sum of five hundred dollars—

"To my son, James William Hirsig, if living, I give and bequeath the sum of five hundred dollars—

"(The above bequests are made in view of the fact that I destroyed Lawrence's note for five hundred dollars soon after his father's death.)

"To my sister, Mrs. Maude McBryde Haley, if living, I give and bequeath the sum of five hundred dollars.

"To my three children—Lawrence, James, and William Hirsig—I give and bequeath equally the remainder of any property which may have at the time of my decease, whether personal property, money in bank or banks, any stocks or bonds that I may possess, any notes that may be my property, and any real estate that I may possess."

Her estate devised to her sons, was, at the time of her death, of the value of about $15,608.67, and consisted of personalty and five tracts of land.

When the original bill in this cause was filed, on July 12, 1934, neither the will of W. G. Hirsig nor the will of Mrs. Josephine Hirsig had been probated. They were later duly probated, on August 1, 1934, and recorded.

On the filing of the bill attachment was issued and levied upon the realty and nonresident publication was made for Lawrence M. Hirsig.

He did not answer and pro confesso was taken against him.

James W. Hirsig and William G. Hirsig answered and alleged that the money their mother had paid over to Lawrence was intended as an advancement; that the amount advanced him was more than his share of the estate. They further alleged that after their mother's death Lawrence agreed with them that he had received more than his share of said estate through these advancements and directed the executor to pay and deliver all the estate to them—James and William. They asked that the attachment be dismissed and that they be decreed to be the owners of the property.

On the hearing the following instrument, which had been executed by Lawrence, was filed:

"In consideration of the fact that my debts to my beloved mother, Mrs. Josephine M. Hirsig, widow of my father, Mr. W. G. Hirsig, amount to the value of my possible interest in my said mother's estate, real and personal, I, Lawrence M. Hirsig, hereby release, quitclaim and convey unto my brothers, James W. Hirsig, and William G. Hirsig (who with myself constitute the only distributees and heirs at law of our said mother) in equal shares, all the interest or claim of every kind that I have or might have in all the property, real and personal, owned by my mother at her death, including all realty in Davidson County, Tenn., or elsewhere. And I hereby authorize and direct Mr. Curtis B. Haley, Executor of the estate of my mother, Mrs. Josephine M. Hirsig, to pay over and deliver to my said brothers in equal parts, any amount, or any property that might otherwise have been due me from my mother's estate: and this will be evidence to all, that my said brothers are entitled to receive and receipt for all the estate of my mother—since I have released to them all my possible interest in my mother's estate.

"And Mrs. Roberta W. Hirsig, wife of Lawrence M. Hirsig, joins in this conveyance for the purpose of releasing to said James W. and

William G. Hirsig all interest she might have, if any, in the property named, whether the same be homestead, dower, or otherwise. This October 13, 1932.

"(Signed) L. M. Hirsig,
"(Signed Roberta W. Hirsig.

"State of Tenn.⎱
"Carter County.⎰

"Personally appeared before me, J. B. Miles, a Notary Public, in and for the said County and State, the within named Lawrence M. Hirsig and wife Roberta W. Hirsig, the bargainors, with whom I am personally acquainted and who acknowledged that they executed the within instrument for the purposes therein contained. And Mrs. Roberta W. Hirsig, wife of the said Lawrence M. Hirsig, having appeared before me privately and apart from her said husband, the said Mrs. Roberta W. Hirsig acknowledged the execution of said instrument to have been done by her freely, voluntarily, and understandingly, and without compulsion or constraint from her said husband, and for the purposes therein expressed.

"Witness my hand and seal at Elizabethton, Tenn., October 13, 1932.

"(Signed) J. B. Miles,
Notary Public.

"My commission expires April 16, 1935.

(Seal)."

On objection of the complainant the Chancellor excluded all the evidence for the defendants on the subject of advancements and all evidence that Mrs. Hirsig had intended to make another will but had died suddenly before it was made.

No objection was made to the evidence that Lawrence, after Mrs. Hirsig's death, told his brothers he would claim nothing from her estate.

The Chancellor decreed that Lawrence M. Hirsig was indebted to the complainant McQuiddy Printing Company in the sum of $10,835.-79 plus interest; that at the time of the filing of the original bill and the issuance and levy of the attachment Lawrence M. Hirsig was seized and possessed of a one-third undivided interest in said lands as devisee under the will of Mrs. Josephine Hirsig, his mother.

The Chancellor held that the evidence introduced by the defendants (which was objected to by the complainant and excluded), tending to show advancements from the testatrix Mrs. Josephine Hirsig to Lawrence M. Hirsig, was inadmissible because the provisions of her will (purporting to dispose of all her property) make impossible the collation of advancements, and the parol evidence introduced by the defendants tending to show a revocation of her said will (all of which was objected to and excluded) was inadmissible; and that the complainant by virtue of the levy of attachment on said real estate

acquired a lien upon said property superior to any rights acquired by the defendants James W. Hirsig and William G. Hirsig under the transfer or conveyance of Lawrence M. Hirsig's interest in said real estate to the said James H. Hirsig and William G. Hirsig subsequent to the death of Mrs. Josephine Hirsig.

He decreed that the complainant recover of the defendant Lawrence M. Hirsig the sum of $10,835.79, plus interest amounting to $1,652.46 (from July 12, 1934 to the date of the decree), making a total of $12,488.25, which was a lien on his one third interest in said land, and ordered the land sold in satisfaction of the decree, but awarded no personal judgment against him because he was before the court only because of the attachment.

The defendants James W. Hirsig and William G. Hirsig excepted to said decree and prayed an appeal to this Court, which was granted, but the appeal was not then perfected.

Within thirty days after the decree was entered, the defendants James W. Hirsig and William G. Hirsig, without perfecting their appeal, filed a petition for a rehearing and for permission to file an amended answer and cross-bill, alleging that "through inadequate pleading or other inadvertent error a mistake was made or misconstruction given as to the admissibility and weight of the most vital facts and testimony in the suit."

The aforesaid decree was set aside and the amended answer and cross-bill was permitted to be filed.

It is alleged in the amended answer and cross-bill that Mrs. Hirsig had made advancements to Lawrence M. Hirsig (as alleged in the former answer); that a family settlement had been made; and that after her death Lawrence had renounced his legacy and devise under her will and later executed a release.

The complainant McQuiddy Printing Company demurred to the amended answer and cross-bill on the ground that the relief sought was inconsistent with and repugnant to the defense set up in the original answer—the case having been tried upon the theory that because of advancements to him by his mother Lawrence had no interest in her estate at her death, and the petition for a rehearing alleging that Lawrence had renounced and disclaimed the devise in his favor in his mother's will.

Additional proof was taken.

James, William and Lawrence testified that the day after their mother's death Lawrence said he would claim nothing.

Curtis B. Haley testified that soon after Mrs. Hirsig's death the three boys told him they had made a family settlement and Lawrence had disclaimed any interest in the estate; that he asked Mr. Noah W. Cooper to draw up a release to be signed by Lawrence, which he did, it being the instrument hereinabove set out.

Noah W. Cooper testified that in the summer of 1932 Dr. Haley told him that the three Hirsig boys had agreed upon a settlement of Mrs. Hirsig's estate; that Lawrence had agreed to claim nothing from the estate because he had received from his mother in her lifetime more than one-third of her estate; and Dr. Haley asked him to prepare an instrument to this effect, to be signed by Lawrence; and he drafted the instrument hereinabove set out.

After the filing of the amended answer and cross-bill, William G. Hirsig died, on November 19, 1937.

On November 20, 1937, the complainant filed an amended and supplemental bill seeking to reach any right, title, or interest which Lawrence M. Hirsig might have in the estate of his brother, William G. Hirsig.

It was shown that William G. Hirsig left a will in which he bequeathed to his brother Lawrence the sum of $5, and that he bequeathed and devised the remainder of his estate, one-half to his brother James W. Hirsig, and one-half to Mrs. Constance Carter Hirsig, the second wife of Lawrence M. Hirsig.

On motion of the complainant McQuiddy Printing Company its amended and supplemental bill was dismissed and the attachment and injunction released.

On the second trial the Chancellor found and decreed that the defendants Hirsig having defended the cause at the first trial on the ground that Lawrence M. Hirsig had received advancements from the estate of his mother amounting to more than his share of the estate, could not defend the second trial upon the inconsistent theory that Lawrence M. Hirsig renounced the devise to him in his mother's will. He further found and decreed that the instrument executed by Lawrence M. Hirsig and his first wife, Roberta W. Hirsig, on October 13, 1932, was not a renunciation by him of the provisions of his mother's will in his favor, but was a conveyance of any and all interest which he might have in his mother's estate to James W. Hirsig and William G. Hirsig, and that on the facts in the case Lawrence M. Hirsig did not renounce the provisions of his mother's will in his favor. He decreed that the complainant recover $13,620.65 and that same was a lien under the levy of the attachment on the realty and ordered it sold in satisfaction of said decree.

The defendants excepted to said decree, and perfected their appeal to this Court, and have assigned errors, which are, in substance, as follows:

(1) The Chancellor erred in holding that the defense set up in the amended answer and cross-bill was inconsistent with the defense made in the original answer.

(2) The Chancellor erred in failing to hold that Lawrence M. Hirsig renounced his interest in said estate under the provisions of his mother's will.

(3) The Chancellor erred in holding that the instrument executed by Lawrence was a conveyance and not a disclaimer.

(4) The Chancellor erred in failing to hold that a family settlement was made.

(5) The Chancellor erred in excluding certain evidence about advancements to Lawrence and about a family settlement made before the death of Mrs. Hirsig.

1. The first proposition to be considered is whether Lawrence Hirsig held his interest in the estate, if any, as devisee or by inheritance, as the solution of this question will greatly aid in determining whether he has any interest. If he holds the same estate by devise that the law casts on him by descent, he is in by descent and not by devise. Hoover's Lessee v. Gregory, 10 Yerg., 444. If he takes by descent he cannot renounce his interest so as to defeat his creditors. Such estate vested in him immediately upon the decease of his mother. In that respect his position differs from an assignee or devisee of the estate, who has the right to elect whether he will receive the estate or not, and can never have it forced upon him against his will. Bingham on Laws of Descent, 1 to 3; 3 Washburn on Real Property (6 Ed.), sec. 1829; 1 Jones' Blackstone 984, sec. 285 (2 Bl. Cum., 201); 18 C. J., 876-877, secs. 132, 133.

There are several old cases which hold that "at the common law a devisee who takes by the will precisely the estate that would have been cast upon him by descent, is in by descent and not by purchase, and his estate being clogged by conditions or encumbrances, does not change its descendible quality. The charge does not in such cases convert him into a purchaser." Kinney v. Glasgow, 53 Pa., 141; Jonas Hartman's Estate, 4 Rawle (Pa.), 39, 44; 2 Thomas' Coke upon Littleton, 200 (170, note 21); Hurst v. Winchelsea, 2 Burrow, 879, 97 Reprint, 611; Clerk v. Smith, 1 Salkeld, 242, 91 Reprint, 214; Hedger v. Rowe, 3 Levinz, 127, 83 Reprint, 612; Allen v. Heber, 1 Black. Rep., 22, 96 Reprint, 12; 1 Redfield on Wills (3 Ed.), 241 (*260); 68 C. J., 516, 517, sec. 132; 18 Am. & Eng. Ency. Law (2 Ed.), 740.

These cases hold that the fact the estate is clogged with conditions or encumbrances does not change his condition and he will take by descent instead of by devise if the tenure, quality and quantity are the same; and they seemed to ignore the provisions of the will bequeathing legacies or attaching conditions to the estate.

In all the cases the person named as devisee was held to be in by descent, because the devise was void. It is, therefore, absurd to say that as heir at law and taking by descent, the will can impose any obligations on the heir not imposed on him by the laws of descent. The devisee is either void or operative. The devisee is either in under the will, or he is in by descend. There is no middle ground between the two. When it is once decided that a person

takes by descent, it is absurd to say that his rights to the estate can be, in any way, affected by the devise. Bingham on Laws of Descent, 505 to 510.

The rule that devise of the same interest that the devisee would have taken by descent is void applies only where the devise and the inheritance would be identical in tenure, quality and quantity. Wehrman v. Farmers' & Merchants' Sav. Bank, 221 Iowa, 249, 159 N. W., 564; 68 C. J., 516, sec. 132; Bingham on Laws of Descent, 505 to 510; 4 Kent's Commentaries, (14 Ed.), 617 (*506-507).

Applying these principles to this case, we think that Lawrence took under the will and not by descent, as the estates are not identical in tenure, quality and quantity, as the testatrix provided for three legacies of $500 each, one to go to her sister. If he took by descent he must account for the advancements of more than $20,-000, which would entirely wipe out his interest in the estate. If he took under the will, the advancements are forgiven; hence, the estates are not identical.

2. We do not think the defenses set up in the amended answer and cross-bill were inconsistent with the defenses made in the original answer. In the original answer the defendants pleaded that Lawrence Hirsig had received $21,988 advancements, which was much more than his portion of his mother's estate, and that he agreed with them after her death that he had already received more than his share as advancements, and he directed the executor to pay over his portion of the estate to them. After petition for a rehearing was granted, they filed a second answer and cross-bill in which they alleged that Lawrence Hirsig had renounced his legacy and devise and had executed a release to them, and they therefore insisted that he had no interest in the estate.

The substance of the defenses is that Lawrence had no interest in the estate, first, because he had received in advancements more than his share of the estate, and second, because he had renounced his devise. These defenses are not inconsistent. The answers merely give two reasons why Lawrence had no interest. It frequently happens that for redress of a particular wrong the law affords two or more remedies.

Where the remedies are so inconsistent or repugnant that the pursuit of one necessarily involves the negation of the other, the party who invokes one of them is held to have made his election of remedies and cannot thereafter have the benefit of the other. Montlake Coal Co. v. Chattanooga Company, 137 Tenn., 440, 193 S. W., 1057; 20 C. J., 11, 27.

But the remedies must be inconsistent with each other, and not analogous, consistent, and concurrent. There is no inconsistency between different remedies all of which are based upon the affirmance or disaffirmance of the contract. 20 C. J., 7, 15.

The rules of pleading about repugnancy and consistency apply to answers as well as to bills. 21 C. J., 406-408, 561. Hence, these defenses are not inconsistent, and the first assignment of error must be sustained; but the determination of this proposition does not settle the question whether Lawrence actually renounced the devise.

3. We are of the opinion that Lawrence Hirsig did not legally renounce the devise, in that, he executed a deed in which he "released, quitclaimed and conveyed" all his interest in the estate to his brothers, which conveyance operated as an acceptance of the devise.

A devisee may renounce his devise, but he must do so in express terms or by acts equivalent to it. 69 C. J., 974, sec. 2168.

"In 4 Kent, Com. 533, it is said: 'An estate vests, under a devise, on the death of the testator before entry; but a devisee is not bound to accept of a devise to him nolens volens, and he may renounce the gift, by which act the estate will descend to the heir, or pass in some other direction under the will. The disclaimer and renunciation must be by some unequivocal act, and it is left undecided whether a verbal disclaimer will be sufficient. A disclaimer by deed is sufficient, and some judges have held that it may be by a verbal renunciation. Perhaps the case will be governed by circumstances.' " Bradford v. Calhoun, 120 Tenn., 53, 57, 109 S. W., 502, 503, 19 L. R. A. (N. S.), 595.

The defendants testified before the first trial that Lawrence had received several thousand dollars in advancements, and that he had agreed with his brothers that they should be treated as advancements, and he asked his uncle, the executor, Dr. Haley, to have written a contract stating the agreement between them, and he and his wife would signed it. This was done. The written agreement is therefore the contract between the parties, and it alone is binding on all of them.

They testified before the last trial that Lawrence had renounced the devise, and that the deed didn't correctly state the agreement; but they referred to it as the written agreement between the parties on the first trial.

All the oral discussions culminated in this written agreement, and are merged into it, and parol evidence is not admissible to contradict or vary it. Beal's Cardinal Rules of Legal Interpretation (2 Ed.), 143; Bridges v. Robinson, 2 Cooper's Tenn. Ch., 720, 723.

"Ordinarily, as between parties and their privies parol evidence is not admissible to contradict or vary the terms of a written contract, and the writing merges all prior oral agreements. 2 Williston on Contracts, 1217-1225, secs. 630-632; Litterer v. Wright, 151 Tenn., 210, 268 S. W., 624.

"The written memorial, as interpreted by the law, is, for legal purposes, the sole act of the parties in regard to the matter up

.to the time of the integration. 2 Williston on Contracts, 1224, sec. 632.

"The parol evidence rule is 'a rule of substantive law which, when applicable, defines the limits of the contract.' It is not a rule of evidence, and is of itself not a rule of interpretation. Deaver v. Mahan Motor Co., 163 Tenn., 429, 43 S. W. (2d), 199; 2 Williston on Contracts, 1221, sec. 631; 3 Jones on Evidence (2 Ed.), 2695, sec. 1482.

"A collateral inconsistent contract between the parties cannot be enforced. 2 Page on Contracts (1 Ed.), sec. 1222.

"Parol evidence is not admissible to show the construction placed upon a contract by the parties themselves, when their intention my be readily ascertained from the contract, as reduced to writing by them. 21 Am. & Eng. Ency. Law (2 Ed.), 113; Ragsdale v. Gossett, 2 Lea, 729; First Nat. Bank of Nashville v. Nashville St. Ry. Co. (Tenn. Ch. App.), 46 S. W., 312, 313.

" 'Whatever the law implies from a contract in writing is as much a part of the contract as that which is therein expressed, and if the contract, with what the law implies, is clear, definite, and complete, it cannot be added to, varied, or contradicted by extrinsic evidence. The law conclusively presumes parties to a contract to understand its obligations, and evidence is not admissible to show their understanding to have been otherwise.' 10 R. C. L., 1046-1047, sec. 240; Litterer v. Wright, 151 Tenn., 210, 268 S. W., 624.'' Ernest Eskind v. General Securities Company,[1] Davidson County Law, Opinion of this Court rendered at Nashville, on October 29, 1938.

This quitclaim deed was executed as a link in the chain of title. Without it there would have appeared of record an outstanding title to one-third of the land devised, and, as testified by some of the parties, it was executed as a link in the chain of title.

"Deeds are presumed to be made with great caution, forethought and advice.'' Beal's Cardinal Rules of Legal Interpretation (2 Ed.), 142; 2 Blackstone's Commentaries, p. 172.

"Particular recitals in a deed are conclusive evidence of the facts recited, in actions in which the purpose of the deed is directly involved.'' Ferguson v. Booth, 128 Tenn., 259, 269, 160 S. W., 67, Ann. Cas., 1915C, 1079.

The construction of an unambiguous contract is a question of law for the court. Quigley & Co. v. Shedd, 104 Tenn., 560, 561, 58 S. W., 266; Toomey v. Atyoe, 95 Tenn., 373, 32 S. W., 254; 13 C. J., 772, sec. 970.

The defendants insist that the deed itself is a renunciation of the devise. We do not think it is, but, on the contrary, we think it is an acceptance. The grantor states in the deed:

[1]No opinion for publication.

"In consideration of the fact that my debts to my mother . . . amount to the value of my possible interest in my mother's estate, real and personal, I, Lawrence M. Hirsig, hereby release, quitclaim and convey unto my brothers . . . in equal shares, all the interest or claim of every kind that I have or might have in all the property, real and personal, owned by my mother at her death. . . . And I hereby authorize and direct Mr. Curtis B. Haley, executor, . . . to pay over and deliver to my brothers in equal parts, any amount, or any property that might have otherwise been due me from my mother's estate," etc.

According to the common law, in a "release" not only a right was surrendered but an interest in the estate was conveyed which became vested in the releasee. A modern "quitclaim deed" is lineally descended from a release, and conveys whatever interest the grantor has. Baldwin's Bouvier's Law Dictionary, 1011 and 1041; 16 Am. Jur., 446-447, secs. 16-18; Campbell v. Ice & Coal Co., 126 Tenn., 524, 150 S. W., 427.

The word "convey" means to pass or transmit property from one to another by an instrument in writing or by deed under seal. Baldwin's Bouvier's Law Dictionary, 232; 16 Am. Jur., 438, sec. 3.

Now, by this deed of release, quiteclaim and conveyance he not only relinquished whatever claim he may have had, but he conveyed this title to his brothers. By this act he accepted the devise and conveyed it away. This was entirely inconsistent with a renunciation of the devise. It was an unequivocal assertion of title, which by necessary implication affirmed his acceptance. It was an act, too, deeply affecting the rights of the parties, and was an assertion of his own title.

"With regard to the facts which require an election the most familiar statement of the doctrine is found in the law of wills. It is laid down (rather too broadly, it seems) as an old rule of equity that a person who has taken a beneficial interest under a will is thereby held to have confirmed and ratified every other part of the same, and he will not be permitted to set up any right or claim of his own, however legal and well founded it may otherwise have been, which would defeat or in any way prevent the full operation of the will." Bigelow on Estoppel (5 Ed.), 674.

"There is reason to doubt, however, as the text intimates, whether the rule should be stated so broadly. In Wollaston v. King (L. R.), 8 Eq., 165, 174, Vice-Chancellor James, a great equity judge, says that the later cases do not justify the rule to the extent in which it was formerly laid down. He says that the rule to be deduced from the (English) cases is that election is to be applied between a gift under a will and a claim dehors the will and adverse to it; it was not to be applied between one clause in a will and another clause in the same will." Bigelow on Estoppel (5 Ed.), 674, note 3.

█ It may be argued that no one can claim an estoppel by deed who is neither a party nor a privy thereto. Tate v. Tate, 126 Tenn., 169, 148 S. W., 1042; Ross v. Cobb, 9 Yerg., 463. But we reply, ''the doctrine of election differs from that of estoppel in pais, in that an election in order to effectiveness need not be acted on by the other party by way of a detrimental change of his position, provided the election is a decisive one.'' Grizzard v. Fite, 137 Tenn., 103, 111, 191 S. W., 969, 971, L. R. A., 1917D, 652.

█ █ This quitclaim deed was executed not only for the purpose of conveying title, but also to aid the executor in the course of the administration of the estate, which is, of course, a court proceeding, to which the doctrine of the election of remedies is applicable. 20 C. J., 32. And the election works a judicial estoppel. Equitable Trust Co. v. Central Trust Co., 145 Tenn., 148, 239 S. W., 171.

█ After he has once accepted the devise he cannot later renounce it. 69 C. J., 969, secs. 2162, 2163; 20 C. J., 38, sec. 33; Grizzard v. Fite, 137 Tenn., 103, 191 S. W., 969, L. R. A., 1917D, 652.

We do not think that Lawrence Hirsig renounced the devise, and the second and third assignments of error are therefore overruled.

█ 4. The Chancellor did not err in holding that a family settlement had not been made, and in excluding the evidence about advancements and the family settlement.

█ The evidence about the intention of Mrs. Hirsig to write a new will and to cut out Lawrence Hirsig is not admissible because it is in direct conflict with the terms of the will.

''No written will shall be revoked or altered by a subsequent nuncupative will, except the same be in the lifetime of the testator reduced to writing and read over to him and approved; and unless the same be proved to have been so done by the oaths of two witnesses at least, who shall be such as are admissible in trials at common law.'' Code, sec. 8097; Sizer's Pritchard on Wills & Executors, secs. 245, 261, 401.

5. The fifth assignment, that the court erred in excluding testimony about advancements and family settlement, should be overruled.

█ While parol evidence about the general situation of the parties at the time the will was executed and the circumstances under which the will was made is admissible in construing the will, it is not admissible to vary or to contradict it. Sizer's Pritchard on Wills & Executors, sec. 409; 69 C. J., 63, 134-135; Dixon v. Cooper, 88 Tenn., 177, 12 S. W., 445.

█ Parol evidence about the advancements was inadmissible as the will purported to dispose of the whole estate and did not mention the advancements, therefore she forgave the advancements. Scholze v. Scholze, 2 Tenn. App., 80.

█ It is not admissible on the question of renunciation, because his motive for renunciation is immaterial. 69 C. J., 974, sec. 2168.

■ The quitclaim deed was never recorded and is, of course, void as against creditors. Code, sec. 7668; Campbell v. Ice & Coal Co., 126 Tenn., 524, 150 S. W., 427.

The material assignments of errors are overruled and it results that the decree of the Chancellor sustaining the attachment and ordering a sale of Lawrence Hirsig's one-third interest in the property attached is affirmed. A decree will be so entered in this Court, and the cause will be remanded for a sale of the property under proper orders of the Chancellor. The costs of the appeal are decreed against the appellants and the surety on their appeal bond. The costs that accrued in the lower court will await the final determination of the case.

Faw, P. J., and Felts, J., concur.