LITTLE DARLIN' CORPORATION, Complainant-Appellant, v. SHELBY SINGLETON PRODUCTIONS, INC., S. SHELBY SINGLETON and JEANNE RILEY, Defendants-Appellees.—448 S.W.2d 447.

Middle Section.   August 29, 1969.

Certiorari Denied by Supreme Court November 3, 1969.

Watkins, McGugin, Stewart, Finch & McNeilly, Nashville, for appellant.

Harlan Dodson, Hooker, Keeble, Dodson & Harris, Nashville, for appellees.

## THE CASE

SHRIVER, J. This is an appeal from a judgment of Part I of the Chancery Court at Nashville dismissing complainant's bill, as amended, seeking reversal of the judgment and remand of the cause to determine damages and for reinstatement of an injunction.

Complainant corporation brought suit as assignee of an exclusive personal services recording contract against Jeanne Riley, Shelby Singleton and Shelby Singleton Productions, Inc. for breach of contract entered into by Jeanne Riley with Aubrey Mayhew, doing business as, Little Darlin' Records, which contract purported to give Aubrey Mayhew, operating as Little Darlin' Records, the exclusive right to make phonograph records, tapes, and other recordings of Jeanne Riley as a singing artist and to sell and distribute said records.

A number of other defendants were named in the original bill but complainant subsequently dismissed as to them.

The cause was heard before Chancellor Ned Lentz and resulted in the following decree:

"This cause came on to be heard on this and former days of the term before the Honorable Ned Lentz, Chancellor, etc., upon the original bill, the amended and supplemental bill of the complainant, Little Darlin' Corporation, the answers of the defendants, Shelby Singleton Productions, Inc., S. Shelby Singleton and Jeanne Riley, to the original and the amended and supplemental bills of complaint, the testimony of witnesses heard in open Court, argument of counsel and the entire record, from all of which the Court is of opinion and finds that the release given to defendant, Jeanne Riley by Aubrey Mayhew was intended as a release from all of her contracts, as more fully set forth in the Oral ruling of the Court, a transcript of which has been identified by the signature of the Court and is ordered filed as a part of the record.

It is accordingly ordered, adjudged and decreed by the Court:

1. The original bill is hereby dismissed at the cost of the complainant for which execution may issue, if necessary.

2. That the complainant and the surety on its injunction bond are hereby released from all liability on the injunction bond.

To the foregoing action of the Court the complainant excepts and prays an appeal to the Court of Appeals for the Middle District of Tennessee, at Nashville, which the Court is pleased to grant upon the complainant executing bond or otherwise perfecting its appeal as required by law.

O.K. for entry:

> Watkins, McGugin, Stewart,
> Finch & McNeilly
> By: W. W. McNeilly, Jr.
> Solicitor for Complainant
>
> Harlan Dodson
> Solicitor for Shelby
> Singleton Productions,
> Inc., S. Shelby Singleton
> and Jeanne Riley''

There was a motion for a new trial which was overruled and the cause was appealed to this Court and assignments filed.

## ASSIGNMENTS OF ERROR

There are four assignments as follows:

1. The Court erred in holding that the Release given to Jeanne Riley by Aubrey Mayhew d/b/a The Paycheck Company dated April 3, 1967 (Tr. p. 42) released Jeanne Riley from Appellant's contract with her dated January 16, 1967 (Tr. p. 14).

2. The Court erred in finding that the Release, (Tr. p. 42) intended to release Jeanne Riley from Mr. Mayhew, was a Release of Jeanne Riley from her contract belonging to Little Darlin' Corporation and a release from her contract with Mayhew Music Company, not even a party to this litigation.

3. The Court erred in sustaining the objection of Appellees to questions by Appellant's Solicitors calling upon the defendant, the Appellee, Jeanne Riley to testi-

fy respecting alleged "intimidation, misrepresentation and fraud" as charged in Appellee's Answer, (Tr. p. 32) and supplemented by her testimony on direct examination by stating that she was "misled and bribed", (B.E. p. 158) into signing a duplicate of her contract with The Paycheck Company. See B.E. pp. 188-196.

By its ruling the Court deprived Appellant of its basic right of cross-examination of the Appellee Riley with regard to matters raised in her defense. Such testimony went to the credibility of the Appellee Riley whose testimony was accepted by the Court in making its findings of fact.

4. The judgment of the Court is contrary to the overwhelming preponderance of the evidence and contrary to the law applicable to the case.

## THE FACTS

The pertinent facts involved here may be summarized as follows:

The Appellant, Little Darlin' Corporation, is a New York Corporation, now qualified to do business in Tennessee. It is the assignee of an exclusive personal service recording contract between the Appellee, Jeanne Riley, and Little Darlin' Records, a sole proprietorship of Aubrey Mayhew, which contract is dated January 16, 1967, and is made Exhibit 1 to the original bill.

As to Little Darlin' Records, the Amended and Supplemental Bill asserts:

"That prior to the time complainant was incorporated its president, Aubrey Mayhew, did business in

New York, New York as an individual under the proprietary name of Little Darlin' Records; that his first knowledge of defendant, Riley, was a letter addressed to him on the date of December 8, 1966 by Paul Perry, enclosing the 'tape and photo' mentioned.''

The Paycheck Company, whose name appears in the record, is described by Mr. Mayhew as a booking and management company and is owned by him and Johnny Paycheck.

It is alleged in the original bill and shown that the complainant is a producer, manufacturer and distributor of phonograph records under several different trade names. The defendant, Shelby Singleton Productions, Inc., is engaged in the same type of business, one of which divisions or trade names is ''Plantation Records''. The defendant, Shelby Singleton, is the sole or principal owner of Shelby Singleton Productions, Inc. and its Plantation Records Division, and he is the chief executive officer and active managing head of the business.

Defendant, Jeanne Riley, is a recording artist who is presently widely known and acclaimed in the music world, particularly since her recording of the record ''Harper Valley P.T.A.'' which skyrocketed into popularity almost immediately upon its release, the record here showing that perhaps more than a million and a half of her recordings of that song had been sold at the time of the trial. This, of course, brought great fame and popularity to the defendant, Jeanne Riley, and almost immediately after the record gained such immense popularity this suit was brought for damages and seeking to enjoin the defendants from making further recordings.

The defendant, Jeanne Riley, came to Nashville from her home in Texas hoping to get into the country music field as an artist, and, after making some tape recordings which were heard by other people in that field, she was eventually put in touch with Aubrey Mayhew, who was doing business in New York as Little Darlin' Records, and he entered into a contract with her as hereinabove stated.

Pertinent paragraphs in this contract are quoted in the original bill as follows;

"1. This contract is for the exclusive personal services of the Artist by the employer for the purpose of making phonograph records, tapes and other recordings as the Employer may require.

\* \* \* \* \* \*

12. The Employer shall have the right to use and allow others to use the Artist's name, facsimile signature and likeness and biographical material for advertising trade purposes, and otherwise without restriction. The Artist agrees that during the term of this Agreement he will not permit or authorize anyone other that the Employer to use his name, signature, or likeness in connection with the making, advertising or marketing of any phonograph records.

13. During the term of this Agreement, and all renewals and extensions thereof, the Artist will not perform for the purpose of making phonograph records for any person, firm or corporation other than the Employer, his services for such purposes being exclusive with the Employer and he will not perform any musical composition recorded hereunder for any other person, firm or corporation for the purpose of making phono-

graph records within five (5) years after the termination of this Agreement, including any option periods.''

The original bill alleges that the foregoing agreement was continuously in full force and effect from and after January 16, 1967 at which time it was signed by the parties and that until approximately 3 weeks prior to the filing of the original bill the defendant, Jeanne Riley, abided by and faithfully performed her part of the contract, but that since then she had totally breached the contract and continued to do so.

The original bill further charges that recently without any consent or knowledge of complainant the defendant Jeanne Riley, at the enticement and procurement of S. Shelby Singleton, recorded as vocalist two songs which were produced and manufactured by or for the defendant, Shelby Singleton Productions, Inc., its Plantation Records Division, and are now being widely distributed and widely sold by said defendants.

It is charged that one of said songs is, ''Harper Valley P.T.A.'' and the other is ''Yesterday All Day Long Today'' which appear on opposite sides of Plantation Record No. 3, one of which records is attached to the original bill as an Exhibit, and that said record had been a tremendous, instant hit and was being widely sold throughout the civilized world.

It is further charged in the bill and is supported by the proof that prior to January 1967, defendant, Jeanne Riley, was an unknown resident of Texas with aspirations for a musical career and in furtherance of this purpose moved to Nashville and that in December, 1966 she was put in touch with Aubrey Mayhew in complainant's New

York office by means of a photograph of her and a tape of her voice, which resulted in the signing of the contract hereinabove referred to.

The bill charges that by reason of the breach of the contract the complainant, at the time the bill was filed, had lost profits of $390,000.00 on the sale of approximately 500,000 copies a week on which complainant was being wrongfully deprived of its profit. It is further charged that the instant tremendous success of a record such as the "Harper Valley P.T.A." catapults the recording artist into overnight, international fame as a result of which tremendous sales of albums and future records by the recording artist will result.

The bill charges that, regardless of the outcome of this suit, every day that this record is sold the Plantation Records label becomes more widely known and acceptable to the public, while conversely the complainant is deprived of that advertising and public acceptance for its label or brand name, Little Darlin' Records, and that complainant being deprived of the services of its recording artist Jeanne Riley suffers great damage thereby.

A temporary injunction was issued pursuant to the prayers of the bill but was subsequently dissolved.

It is the contention of the defendant Jeanne Riley that, contrary to the assertion of the complainant, the contract between Aubrey Mayhew, doing business as, Little Darlin' Records and defendant, Jeanne Riley, was performed by the assignor that, actually, Aubrey Mayhew was not convinced that the defendant had enough talent to succeed as a recording artist and did not undertake to produce any records of her voice for general distribution.

It is pointed out that the contract on which this suit is predicated and which, allegedly, was assigned to the Little Darlin' Corporation, is not a contract between Jeanne Riley and the complainant corporation but rather is a contract with Aubrey Mayhew operating as Little Darlin' Records. It is further pointed out that, while this contract is dated January 16, 1967, the record shows without dispute that the charter of said corporation had been signed on December 20, 1966 and filed in New York on January 6, 1967. Mr. Mayhew, testifying on behalf of the appellant, claimed that the reason he did not have the contract signed by the corporation was that it was not incorporated on January 16, 1967, nor had its name been decided on. However, this turned out to be untrue and Mr. Mayhew's explanation was that his lawyer was handling the incorporation and he didn't know about its having been filed.

And, in this connection the defendant, Jeanne Riley, testified that she thought she was dealing with Aubrey Mayhew, an individual, and thought that the Paycheck Company was the name of Little Darlin' Records and Mayhew Music together and knew nothing about the Little Darlin' Corporation and was never notified of an alleged assignment of her contract to the corporation.

Also, it is noteworthy that, according to the insistence of Mr. Mayhew, he recorded Jeanne Riley four times with 17 songs between January 16, 1967 and April 3, 1968 in compliance with the contract which called for at least four recordings a year. Of these recordings Mr. Mayhew claims that two were Master Sessions and one a Demonstration Session, or "Demo" Session, intended to be used later as a Master Session. It is explained that a

"Demo", or Demonstration Session, is not a recording in compliance with the contract but is a session made for the benefit of the recording company, and the tape made at such a session is used to try to sell the song to a publisher or to get a contract for some other artist whose voice suits that particular song, and is not the kind of session designed to aid or help the person engaged in the "Demo" Session, such as was the case with Jeanne Riley.

It is, thus, insisted by counsel that the contract was breached by the Little Darlin' Records, or Mayhew, and was not subject to enforcement by the assignee.

Without going further into details with respect to the performance or non-performance of the contract, it appears from the record that defendant, Jeanne Riley and her manager, became convinced that she was making no progress in the music world under Mayhew and his company and, therefore, requested that she be released from her contract. As a result of several such requests and some negotiations the following release was signed by the parties:

## "RELEASE

This indenture made this 3rd day of April, 1968, between JEANNE RILEY of 1022-B. Westchester Drive, Madison, Tennessee of the one part, and AUBREY MAYHEW d/b/a THE PAYCHECK COMPANY, of 101 West 55th Street, New York, New York, of the other part, witnesseth that each of them, the said JEANNE RILEY and the said AUBREY MAYHEW, hereby releases the other of them from all sums of money, accounts, actions, suits, proceedings, claims, contracts and demands whatsoever which either of

them has or had up to the date of these presents against the other for or by reason of or in respect of any act, cause, contract, matter or thing.

IN WITNESS WHEREOF The said parties have hereunto set their hands and seals the day and year first above written.

/s/ Jeanne Riley
JEANNE RILEY

/s/ Aubrey Mayhew
AUBREY MAYHEW
THE PAYCHECK
COMPANY"

It is insisted by the defendant Jeanne Riley that individually and through her agent, she asked Mayhew for a release so that she could get off the Mayhew label and be free to contract with others, and, after she found that what had been represented to her by Mayhew as recording sessions, were in fact demonstration or "Demo" Sessions, she insisted on a release from her contract.

Mr. Mayhew denies that the release was intended as a release from the Little Darlin' contract and insists that he had an additional personal appearance contract which was known as the "Paycheck Contract" which the release was intended to apply to. On the other hand, Jeanne Riley and her Manager, Paul Perry, both insist that there never was a Paycheck contract executed by Jeanne Riley until the very day this suit was instituted and that she signed what she thought was another paper and insists that she was deceived into signing same.

It is to be noted that, although Mr. Mayhew denies that he intended to release her from her recording con-

tract, the release itself recites that it is a release of each of the parties from every claim and contract which either of them had, or has had up to that date with the other, "by reason of, or in respect of any act, cause, contract, matter or thing."

All of Jeanne Riley's dealings in regard to the contract and release involved here were with Aubrey Mayhew. She says she had no notice of the purported assignment of her contract, hence, had no reason to question the fact that the release was other than a full and complete release from any contract she had signed with Mayhew.

With respect to the Little Darlin' Corporation, several matters should be noted:

(1) While it has been doing business in Tennessee since November 1967 and the acts on which it relies occurred in Tennessee, it was not domesticated and qualified to do business here until August 30, 1968, after the instant suit had been filed.

(2) The Minutes of the corporation fail to show that the contract in question was ever assigned to it and the obligations of the contract assumed or accepted by it.

(3) Mr. Mayhew, testifying as to certain corrections he desired to make in his affidavit filed in the course of preliminary hearings on the injunction issued, said:

"A. And the other is I have stated to you I thought the stockholders should approve any disposition of the assets on my part and I was incorrect there. As a Manager I had, in the past, made a practice of managing the company completely without reference to the stockholders."

■■ Numerous authorities are cited by counsel for complainant to the effect that parol evidence is inadmissible to contradict, vary or alter the terms of a written agreement. However, we think these authorities are not applicable to the facts of this case.

The release is couched in such language as that it appears to cover all contracts entered into by the defendant Riley with Mr. Mayhew and his interests, including the recording contract with Little Darlin' Records, a proprietorship of Mayhew. And, since complainant insists that the recording contract was not intended to be covered by the release, the intention of the parties in executing the release becomes vital to a determination of this issue. The Chancellor found from a preponderance of the evidence that the intention of the parties when the release was signed was to cover and include the recording contract, and we concur in this conclusion.

In 10 R.C.L. Evidence, 210, the applicable rule is stated thus:

"Equity frequently will admit parol evidence to show the intention of parties in executing a writing, and will, if possible, carry out this intention."

At Sec. 212 in the same text it is said:

"212. Evidence Consistent with Writing. — Parol evidence that is not repugnant to the terms of a writing to which it relates, but is consistent with and explanatory of them, is admissible."

And at Sec. 231, P. 1039 it is stated:

"231. Purpose of Instrument.—An exception to or limitation upon the rule forbidding the introduction of

oral evidence to affect writings exists where the proof is tendered in order to show what was the purpose of the instrument. In such case the evidence is held to be admissible.''

In speaking on the subject our Supreme Court in Searcy v. Brandon, 167 Tenn. 218, 68 S.W.2d 112 said:

"The ultimate test is that of contradiction, which is never permissible.''

The rule was stated by this Court in Gibson County v. Fourth & First Nat. Bank, 20 Tenn.App. 168, 96 S.W. 2d 184 as follows:

"Parol evidence may be admitted to show fraud, accident, or mistake; true consideration; any other inducement; condition, not inconsistent with writing, upon which contract was to take effect; to explain latent ambiguity; and to ascertain intention of parties where meaning of written contract is uncertain.''

In view of the foregoing conclusions we deem it unnecessary to discuss the other aspects of this case. We find no merit in Assignment No. 3 relative to the Chancellor's rulings on objections to questions on cross-examination of defendant Riley.

For the reasons hereinabove set forth all assignments of error are overruled and the judgment of the Chancellor is affirmed.

Affirmed.

Puryear and Todd, JJ., concur.