**In re James Hugh JOHNSON, d/b/a Lazy Jim's Grocery, d/b/a Lazy Jim's Liquors, Debtor.**

**Dorothy Virginia Moneymaker Johnson JOYNER, Plaintiff/Appellee,**

v.

**James Hugh JOHNSON, Defendant and Third–Party Plaintiff,**

v.

**TENNESSEE STATE BANK, Third–Party Defendant/Appellant.**

No. 3:92–cv–734.

United States District Court, E.D. Tennessee, Northern Division.

April 22, 1994.

John H. Fowler, Sevierville, TN, for Appellant.

John F. Weaver, McCord, Weaver & Troutman, Knoxville, TN, for Appellee.

---

1. References to "R." and a number are to one of the numbered documents in the record on appeal

## MEMORANDUM OPINION

JORDAN, District Judge.

This is a bankruptcy appeal brought to this court by Tennessee State Bank under 28 U.S.C. § 158(a). This court has jurisdiction of this adversary proceeding under 28 U.S.C. §§ 158(a) and 1334(a).

This court, sitting as an appellate court, considers *de novo* issues of law, but the bankruptcy court's "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankr.R. 8013. The court finds that in this case, the findings of fact made by United States Bankruptcy Judge Richard Stair, Jr., are not clearly erroneous.

The procedural history of this adversary proceeding is as follows. The debtor, whom the court will refer to as Mr. Johnson, commenced his case under chapter 11 of the Bankruptcy Code. His former wife, the plaintiff/appellee, whom the court will refer to as Ms. Joyner, commenced this adversary proceeding by filing a complaint to determine the dischargeability of certain obligations. [R. 11.[1]] The debtor, Mr. Johnson, counterclaimed and commenced a third-party action against Tennessee State Bank, which the court will refer to simply as the bank, seeking judicial determination of the status of a claimed lien in Ms. Joyner's favor against property of the estate. [R. 12.] Ms. Joyner joined issue with both Mr. Johnson and the bank by counterclaiming back against the former and cross-claiming against the latter, asking the bankruptcy court to determine her claimed lien to be valid and existing and prior to a deed of trust lien in favor of the bank. [R. 13.] Ms. Joyner also prayed that she be held to be subrogated to certain rights of the bank against Mr. Johnson.

Judge Stair stated his findings in a memorandum opinion dictated from the bench on July 21, 1992, and filed in this adversary proceeding in September 1992. [R. 4.] The

transmitted to this court by the bankruptcy court clerk pursuant to Bankr.R. 8007(b).

facts found are as follows. Ms. Joyner and Mr. Johnson were married to one another until the dissolution of their marriage by the Sevier County, Tennessee Chancery Court in 1987. In his findings of fact and conclusions of law made after hearing the divorce action, the chancellor awarded Ms. Joyner a divorce on the ground of cruel and inhuman treatment, awarded custody of the parties' minor child to Ms. Joyner, and ordered Mr. Johnson to pay child support in the amount of $300.00 per month.

In distributing marital property, the chancellor awarded to Mr. Johnson the improved real property on Highway 321 on which was located Lazy Jim's Grocery and Liquor Store, awarded to Ms. Joyner several lots referred to as the Moneymaker lots (title to them having come from Ms. Joyner's family, the Moneymakers), and awarded to Ms. Joyner a commercial lot on Highway 321. The chancellor decreed that Ms. Joyner should assume the debt secured by the commercial lot and hold Mr. Johnson harmless against this debt, and that Mr. Johnson should assume the debt secured by the Moneymaker lots and hold his former spouse harmless against this debt. The chancellor ordered Mr. Johnson to pay a mortgage[2] debt against the Moneymaker lots.

Mr. Johnson was awarded the Lazy Jim's Grocery and Liquor Store business and the real property on which it was located, and ordered to assume the business debt and a mortgage debt against the real property. In order to render the division of marital property equitable, the chancellor ordered Mr. Johnson to pay to Ms. Joyner $45,364.00. The chancellor denied Ms. Joyner's request for rehabilitative alimony, but ordered Mr. Johnson to provide major medical insurance coverage for the parties' child. In the portion of his findings and conclusions most pertinent to the issues before the bankruptcy court, the chancellor held, "A lien is hereby declared upon the real property known as the Lazy Jim's Grocery and Liquor Store located on Highway 321 to secure the payment by the husband of the amounts herein-before ordered and directed to be paid to the wife as distribution of marital assets, child support arrearages and income tax refund."

The chancery court incorporated these findings and conclusions into a judgment entered in the divorce action, and awarded to the parties the marital real property, described by metes and bounds, in each case divesting the other spouse of his or her interest in the property. In the judgment order, the chancellor again stated that a lien was awarded to Ms. Joyner against the Lazy Jim's Grocery and Liquor Store property, described by metes and bounds, "to secure any and all amounts payable by the Husband to the Wife by virtue of the Findings of Fact and Conclusions of Law of this court...." The chancellor ordered "each of the parties [to] execute and deliver in proper form all deeds, titles, or other documents of title necessary to place into effect the terms of this order."

This order was recorded in the Sevier County land records. It is undisputed, therefore, that after the parties' divorce, examination of the chain of title to the grocery and liquor store property would have shown a conveyance to Mr. Johnson and Ms. Joyner as husband and wife, divestment of Ms. Joyner's title by the divorce order, as if Ms. Joyner had conveyed her interest in the property to Mr. Johnson, and the divorce court's award of a lien against the property in Ms. Joyner's favor, as if Mr. Johnson had conveyed back to her a security interest in the property.

Acrimony between the parties continued after the entry and recordation of the chancery court order. The parties did not meet as scheduled on August 14, 1987, for a planned exchange of quitclaim deeds. On October 19, 1987, the chancery court entered an agreed order which was the product of negotiations concluded before a hearing scheduled on October 9. This order required Mr. Johnson to pay certain amounts to Ms. Joyner, and required the parties to meet at the bank's offices on October 16 "for the purpose of executing any and all documents

---

**2.** The court will use the terms mortgage and deed of trust interchangeably in this memoran-

dum opinion.

necessary for the completion of the previous judgment of the Court ... includ[ing] but ... not limited to" the endorsement of motor vehicle title certificates and delivery of the vehicles, the signing of federal income tax returns, and "[t]he signing of deeds and documents necessary to effectuate transfer and any and all other rights, title and interest to real and personal property or any other items set forth in the Final Judgment."

The October 16 meeting at the bank's offices included the closing of a loan from the bank to Mr. Johnson to refinance the Lazy Jim's Grocery and Liquor Store debt, to pay off his and Ms. Joyner's joint debt secured by deeds of trust against the grocery and liquor store property, and to pay to Ms. Joyner the amount which the agreed order required Mr. Johnson to pay to her. At this meeting or closing, Ms. Joyner exchanged with Mr. Johnson quitclaim deeds to the grocery and liquor store property and to the Moneymaker lots. Mr. Johnson also executed and delivered to the bank a deed of trust to the grocery and liquor store property, in which the source of Mr. Johnson's title was recited to be not the quitclaim deed, but the judgment order entered by the chancery court in the divorce action.

Mr. Johnson failed to fulfill his obligation to hold Ms. Joyner harmless against the debt secured by a deed of trust lien against the Moneymaker lots, and so the bank insisted on its rights in this collateral. The bank released its lien against these lots to permit Ms. Joyner to sell them, but required a substitute lien against funds owned by Ms. Joyner. Upon default in the payment of the underlying obligation, the bank foreclosed this substitute lien and took $20,000.00 of Ms. Joyner's money. This litigation resulted.

As stated above, the original issue in this adversary proceeding concerned the dischargeability of certain obligations of the debtor Mr. Johnson. The bankruptcy court below held against Ms. Joyner on the dischargeability issue, held against her to the extent that she sought to be subrogated to the rights of the bank against Mr. Johnson, fixed her claim secured by the lien against the grocery and liquor store property awarded to her by the chancery court at $20,000.00,

and, what is most important here, held that "the lien securing the claim of [Ms. Joyner], fixed herein at $20,000, constitutes a first lien senior to any interest in the [grocery and liquor store] property ... asserted by ... Tennessee State Bank."

The issues before this court stated by the appellant, the bank, in accordance with Bankr.R. 8006 [R. 9] are whether the bankruptcy court erred in not treating Ms. Joyner's quitclaim deed to the grocery and liquor store property as a release of her lien awarded in the divorce action, and whether the bankruptcy court erred in not finding an estoppel by deed against Ms. Joyner on the basis of this quitclaim deed. The appellee, Ms. Joyner, restated these two issues, and added the issue whether the bankruptcy court had erred in admitting parol evidence concerning Ms. Joyner's intention in delivering her quitclaim deed at the closing on October 16, 1987 [R. 23]. Given the limited scope of this case on appeal, Mr. Johnson has not filed a brief or otherwise appeared in the case.

 While this court finds nothing clearly erroneous in the bankruptcy court's findings of fact, upon *de novo* consideration of the issues of law in the case, the court respectfully concludes that the bankruptcy court erred in its application of the pertinent law to the facts as found by it. There is no dispute that the substantive law of Tennessee governs in this adversary proceeding. Under Tennessee law, Ms. Joyner's quitclaim deed to the grocery and liquor store property conveyed all of her right, title and interest in and to this property. "[A] quitclaim deed is a form of conveyance. Like other deeds, it conveys whatever interest the grantor has, unless otherwise specially limited and confined by its terms." *Campbell v. Home Ice & Coal Company,* 126 Tenn. 524, 530, 150 S.W. 427, 428 (1912) (citations omitted). This is in keeping with the law applicable to conveyances generally: "Every grant or devise of real estate, or any interest therein, shall pass all the estate or interest of the grantor or devisor, unless the intent to pass a less estate or interest shall appear by express terms, or be necessarily implied in the terms

of the instrument." Tennessee Code Annotated § 66–5–101.

■ Furthermore, Tennessee statutory law recognizes the traditional use of quitclaim deeds to release liens as well as to convey other interests in property. In the portion of the Tennessee code concerning the release of liens created by written instruments, it is provided, "The provisions of this chapter shall not be construed to preclude the right of release by way of deed of release or quitclaim." T.C.A. § 66–25–210.

■ This provision should be understood against the background of the common law. "According to the common law, in a 'release' not only a right was surrendered, but an interest in the estate was conveyed which became vested in the releasee. A modern 'quitclaim deed' is lineally descended from a release, and conveys whatever interest the grantor has[.]" *McQuiddy Printing Co. v. Hirsig*, 23 Tenn.App. 434, 446, 134 S.W.2d 197, 204–205, *cert. denied, id.* (Tenn.1939) (citations omitted).

■ By its very terms, Ms. Joyner's quitclaim deed released whatever interest she had in the grocery and liquor store property. Therefore, in allowing Ms. Joyner to testify that she did not have the intention to do this, the bankruptcy court permitted her to contradict the deed made by her, in violation of the parol evidence rule. The rule does not bar evidence to show fraudulent inducement of an agreement, but it does prohibit direct contradiction of the express terms of the agreement. "As well said by Lord Mansfield of the general rule, 'The foundation is that you shall not by parol impeach a written agreement, and say that the agreement was different.'" *Searcy v. Brandon*, 167 Tenn. 218, 221, 68 S.W.2d 112, 113 (1934).

■ The rule applies in cases concerning contracts, deeds and other instruments of conveyance. *See Dunn v. United Sierra Corporation*, 612 S.W.2d 470, 474 (Tenn.Ct. App.1980), *permission to appeal denied, id.* (Tenn.1981), *citing McQuiddy Printing Co. v. Hirsig, supra.* Furthermore, "[t]he construction of an unambiguous contract is a question of law for the court." *McQuiddy*

*Printing Co., supra,* 23 Tenn.App. at 445, 134 S.W.2d at 204 (citations omitted).

Ms. Joyner relies upon such decisions as *Hill v. A.O. Smith Corporation*, 801 F.2d 217 (6th Cir.1986) (applying Tennessee law), and *Little Darlin' Corporation v. Shelby Singleton Productions, Inc.*, 60 Tenn.App. 530, 448 S.W.2d 447, *cert. denied, id.* (Tenn.1969), to argue that the scope of a release depends upon the intent of the releasor, and that a court may receive parol evidence concerning intent or purpose. These decisions, however, recognize that a court looks for intent first in the written expression of an agreement, and that the parol evidence admitted to explain cannot be used to contradict. "[I]n giving effect to a deed of conveyance, the intention of the instrument is the guide to be followed; and that intention is to be arrived at from the language of the instrument read in the light of the surrounding circumstances." *Manhattan Savings Bank & Trust Co. v. Bedford*, 161 Tenn. 187, 197, 30 S.W.2d 227, 229 (1930) (citation omitted).

The contrast between the cases relied on by Ms. Joyner and the case at bar is instructive. In *Hill v. A.O. Smith Corporation, supra,* the first problem which the plaintiffs encountered with respect to the A.O. Smith Harvestore silo feed storage structures purchased by them was with the concrete foundations of the structures. Negotiation with the dealer concerning this problem led to the plaintiffs' execution of a release in which they agreed to release the defendant manufacturer, distributor and dealer from any and all claims, known or unknown, existing or which might arise in connection with Harvestore structures.

It was after the execution of this and another release that the plaintiffs discovered a completely different problem with respect to the structures, in that feed stored in the structures spoiled. The case thus presented the issue whether the intention existed to include within the scope of the release claims arising out of this second problem, unknown to the parties at the time the release was given.

In *Little Darlin' Corporation v. Shelby Singleton Productions, supra,* a similar issue

arose concerning whether a release given by a production company to a performing artist applied only to a personal appearances contract, or to a recording contract, too. The scope of the release became relevant when the performing artist enjoyed success with a recording on another record label. The Tennessee Court of Appeals relied on authority which permits parol evidence to aid the court in ascertaining the parties' intentions where the meaning of the written agreement is uncertain. 448 S.W.2d at 453.

In the case at bar, Ms. Joyner argues that her intention in making and delivering a quitclaim deed to the grocery and liquor store property was to comply with and give effect to the chancery court's order, in keeping with the chancellor's directive to "execute and deliver in proper form all deeds, titles, or other documents of title necessary to place into effect the terms of this order," but not to release the lien in her favor awarded by the chancery court. Unlike in *Hill v. A.O. Smith Corporation* and *Little Darlin' Corporation v. Shelby Singleton Productions,* however, there is no question here concerning the applicability of the quitclaim deed, read as a release, to separate contractual obligations. The quitclaim deed can only be read as having accomplished what quitclaim deeds, by their nature, accomplish: it conveyed all of Ms. Joyner's right, title and interest in and to the described property. To admit parol testimony to show a different purpose of the deed would be to permit such testimony to contradict it, in violation of the rule against parol evidence.

Contrary to Ms. Joyner's argument, this construction does not render the chancellor's directive to execute and deliver all necessary deeds a nullity. The directive was to execute and deliver such deeds as might be required to carry into effect the chancery court's distribution of marital property; it was not a finding or conclusion that the chancery court's judgment order was not itself a link in the formerly married parties' chains of title to their respective properties, nor was it even a finding or conclusion that any quitclaim deeds were necessary. The chancery court recognized that prospective purchasers and title insurers, for examples, might request further assurances of title, and so simply ordered the parties to cooperate with one another in this regard.

Consideration of the evidence offered by Ms. Joyner to justify the admission of parol evidence concerning her intention behind her quitclaim deed does not, this court concludes, lead to a different conclusion. The bankruptcy court noted the testimony of the bank's title attorney that it is the custom in Sevier County, Tennessee, where the divorced parties' real property is situated, to have divorced parties exchange quitclaim deeds in spite of language in divorce decrees divesting interests in real property formerly jointly owned, *see* Tenn.R.Civ.P. 70, but this testimony gives no guidance concerning the practice used when the former spouse who is the grantor wishes to reserve a lien against the conveyed property. Furthermore, other evidence in the record shows that Ms. Joyner conveyed real property to a third party soon after the recordation of the chancery court judgment order, relying upon it without a quitclaim deed from Mr. Johnson to assert that her title enabled her to convey the property by herself.

The testimony in the record of the bank's president that the bank's practice was to use deeds of release instead of quitclaim deeds to obtain the release of liens is of little moment. Given the custom testified to by the bank's title attorney, and the acceptance in Tennessee law of a quitclaim deed as an instrument of release, it was natural to use a quitclaim deed in this transaction, and not at all inconsistent with an intention to release Ms. Joyner's lien against the property described in the deed. The bankruptcy court noted that the bank's title attorney reported twice to his client the existence of the lien in Ms. Joyner's favor against the grocery and liquor store property, but given that his reports were made before the closing and the delivery of Ms. Joyner's quitclaim deed, this proves nothing more than the accuracy of the title reports as to the state of the title to the property before the closing.

The circumstances in which Ms. Joyner delivered the quitclaim deed to the grocery and liquor store property argue in the bank's, and not Ms. Joyner's, favor. The

bank was refinancing a loan to Mr. Johnson, for the purpose in part of providing him with funds with which to meet an obligation to Ms. Joyner arising out of the chancery court's judgment order entered in the divorce action. That Mr. Johnson, Ms. Joyner, and the bank contemplated that the bank would extend new credit to Mr. Johnson in part for this purpose, but would allow Ms. Joyner to continue to have a prior lien against the bank's collateral, is illogical.

The undisputed evidence concerning the structure of this transaction refutes also Ms. Joyner's argument that there was no consideration given to support her release of her lien against the grocery and liquor store property. It is true that "[i]n order to be valid and binding, a release, compromise, or settlement agreement must be based on a sufficient consideration." *Milwee v. Peachtree Cypress Investment Company*, 510 F.Supp. 279, 283 (E.D.Tenn.1977) (citations omitted). However, while Mr. Johnson had a preexisting obligation, established by the chancery court's judgment order entered in the divorce action, to pay a certain amount to Ms. Joyner, the bank had no obligation to finance the satisfaction of this obligation until it agreed to do so, in exchange for the release of Ms. Joyner's prior lien against the collateral which the bank desired. Furthermore, "[a]ll contracts in writing signed by the party to be bound, or his authorized agent and attorney, are prima facie evidence of a consideration." T.C.A. § 47–50–103.

This court's rulings stated above render it unnecessary to address the bank's additional argument that Ms. Joyner is estopped by her quitclaim deed to deny that it conveyed and released all of her right, title and interest in and to the grocery and liquor store property. However, considering this doctrine and more specifically the elements of estoppel by deed, *see Smith v. Sovran Bank Central South*, 792 S.W.2d 928, 931 (Tenn.Ct.App.), *permission to appeal denied, id.* (Tenn.1990), the court concludes that this provides an additional ground for reversing the judgment of the bankruptcy court in this case.

In summary, this court concludes that the bankruptcy court erred in admitting parol evidence to contradict the express terms of the quitclaim deed by which Ms. Joyner conveyed and released all of her right, title and interest in and to the grocery and liquor store property. Even taking into account this parol evidence, however, this court concludes as a matter of law that the effect of the delivery of Ms. Joyner's quitclaim deed was to release her lien against this property. The court also concludes that Ms. Joyner would be estopped by her deed to deny that this was the effect of her delivery of the quitclaim deed. The court will therefore reverse the bankruptcy court's judgment, and remand this adversary proceeding with the instruction to enter a judgment in the bank's favor consistent with this ruling.

### ORDER

For the reasons stated in the court's memorandum opinion filed simultaneously with this order, it is **ORDERED** that the judgment entered by the United States Bankruptcy Court for the Eastern District of Tennessee on July 22, 1992, in this adversary proceeding is **REVERSED IN PART** under Bankr.R. 8013, and that this adversary proceeding is **REMANDED** to the bankruptcy court for the entry of a judgment that Dorothy Virginia Moneymaker Johnson Joyner has no lien against or other interest in the real property of the debtor situated in Sevier County, Tennessee, and known as the Lazy Jim's Grocery and Liquor Store property.