John M. HENRY, M. D.

v.

George W. HOLCOMB, Jr., M. D.

Civ. No. 7172.

United States District Court,
M. D. Tennessee,
Nashville Division.

Aug. 6, 1974.

Rollie L. Woodall, Nashville, Tenn., for plaintiff.

Charles H. Warfield, Nashville, Tenn., for defendant.

## ORDER

MORTON, District Judge.

This suit involves a contract dispute between two physicians over entitlement to certain accounts receivable generated by the physicians' former joint medical practice. Plaintiff sues to recover portions of accounts receivable collected by defendant, and defendant counterclaims for other accounts collected by plaintiff. The court has diversity of citizenship jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a).

During months prior to January, 1972, plaintiff and defendant, both physicians, developed a mutual interest in joining forces to practice pediatric surgery in Nashville, Tennessee. At the time, defendant was already well established in a Nashville medical practice, while plaintiff was still occupied in a surgical residency elsewhere. In furtherance of their desire to associate, the parties discussed orally and through correspondence the feasibility of the venture and possible percentages of income each would receive. After a time, the parties arrived at a mutually suitable arrangement, and in January, 1972, began their association.

Their agreement provided, in essence, that plaintiff would receive a percentage of patient billings, less a like percentage of office overhead. Due to some uncertainty surrounding plaintiff's prospects for success in Nashville in his specialty area, pediatric cardiac surgery, the parties sought to create a flexible agreement which would permit termination of the association without undue complication. Then in June, 1973, defendant, for reasons not material to the instant controversy, left Nashville to pursue his surgical specialty outside Tennessee. Soon after he left, the instant controversy arose—whether plaintiff was entitled to his percentage share of accounts receivable collected after his departure but earned during the period of the associated practice.

 The court determines that the contractual intentions of the parties are contained in both written and oral statements. Since the parol evidence rule does not apply to portions of oral agreements not reduced to writing, parol evidence received at trial is competent to supply the parties' intentions which were omitted from the writings. Hines v. Wilcox, 96 Tenn. 148, 33 S.W. 914 (1896); Little Darlin' Corp. v. Shelby Singleton Pro., Inc., 60 Tenn.App. 530, 448 S.W.2d 447, 453 (1969); Gibson County v. Fourth & First Nat. Bank, 20 Tenn.App. 168, 96 S.W.2d 184, 189 (1936).

After hearing the evidence in this case, the court makes the following findings and conclusions respecting the disputed agreement.

 First, as stipulated by the parties, the arrangement between these two physicians was not intended to be a partnership, and there is no basis to imply one in law. The parties agreed to share in the total income and expenses of the practice in specified percentages which were subject to reevaluation if the association proved successful. To facilitate dissolution of the relationship, the agreement provided that the termination date would serve as the cut-off date for plaintiff's right to income of the practice as well as his obligation for expenses. From this portion of the agreement it therefore follows that, after his departure, plaintiff had no right

to the proceeds of accounts receivable collected after his departure, even though earned prior thereto. Conversely, plaintiff had no obligation to pay his portion of expenses incurred before departure but billed to defendant thereafter. In addition, the evidence further showed that plaintiff's estate was not to share in accounts receivable in the event of his death.

The parties' original agreement was maintained throughout their association, with the only change being an increase in plaintiff's percentage of income and expenses. Although a partnership had been discussed at some points, after one year defendant was unwilling to create a partnership in view of plaintiff's uncertainty about remaining in Nashville.

■■ Plaintiff has sought to recover on a theory of quantum meruit, but the court finds the theory has no application in this case. Under Tennessee law, where compensation is specifically agreed upon in the parties' contract, there can be no recovery for more than the agreed upon amount. Robinson v. Durabilt Mfg. Co., 195 Tenn. 452, 260 S.W.2d 174, 175 (1953); Massey v. Taylor, Wood & Co., 45 Tenn. 447, 449 (1868).

■ Further, even if the theory of quantum meruit were applicable here, plaintiff has not established that defendant was unjustly enriched. To the contrary, it would definitely appear that plaintiff derived the most benefit from the association. He joined an established medical practice, made no capital contributions, and generated very few patients on his own; he was guaranteed a percentage of the income of a successful medical practice which was fair in relation to income produced by his work alone. Plaintiff utilized defendant's office and equipment and was responsible only for furnishing his own private office. And, although after plaintiff's departure defendant, by terms of their agreement, had sole right to outstanding accounts receivable, he also incurred the sole obligation of paying the outstanding bills of the associated practice. It would further appear that most of the accounts receivable at the cut-off-date stemmed from services rendered by defendant. In view of these findings, the court is unable to conclude that defendant will be unjustly enriched through enforcement of the terms of the parties' agreement.

In view of the above findings, the court holds that plaintiff is not entitled to any percentage of accounts receivable earned during his tenure with defendant, but collected after his termination. Defendant is therefore entitled to recover on his counterclaim for all such accounts receivable which plaintiff collected after his June, 1973, departure. Against this sum plaintiff shall be allowed a credit of $35.00 which defendant inadvertently failed to include in the June, 1973, payment to plaintiff. Costs of this action shall be taxed against plaintiff.

The parties shall submit an agreed order in accordance with this Memorandum within ten (10) days of the entry hereof.