## TRI–CITIES FORKLIFT COMPANY, INC., Plaintiff-Appellant,

v.

## CONASAUGA RIVER LUMBER COMPANY, Defendant-Appellee.

Court of Appeals of Tennessee, Eastern Section.

March 14, 1985.

Permission to Appeal Denied by Supreme Court Sept. 30, 1985.

M. Randall Sellers, Jenne, Scott & Sellers, Cleveland, for plaintiff-appellant.

Michael E. Callaway, Bell, Painter, McMurray, Callaway, Brown & Headrick, Cleveland, for defendant-appellee.

## OPINION

SANDERS, Judge.

The pivotal question on this appeal is whether the written provisions of a lease on a forklift truck are controlling or whether extrinsic evidence establishes a transaction constituting a sale of the equipment.

On September 11, 1980, the Plaintiff-Appellant, Tri-Cities Forklift Company, Inc., entered into a lease agreement with the Defendant-Appellee, Conasauga River Lumber Company, whereby the Plaintiff, lessor, leased to the Defendant, lessee, a used Taylor Y–18BWO forklift for a period of 32 months. The rental was $1,000 per month plus $60 per month use tax. As pertinent here, the lease provides: "Upon expiration or termination hereof the equipment shall be returned unencumbered to lessor by lessee...." "Lessee shall pay rent at the agreed rate until" returned.

Upon the expiration of the lease the Plaintiff demanded the return of the forklift, which Defendant refused to do, and that precipitated this litigation.

The Plaintiff filed suit in the chancery court seeking a judgment for possession of the forklift and rent at the rate of $1,060 per month from the date of the expiration of the lease plus reasonable attorney's fees.

For answer the Defendant denied the Plaintiff was entitled to possession of the forklift or that it was liable to the Plaintiff for any additional rent. It stated that it entered into a contract with the Plaintiff to buy the forklift. It was to pay $32,000 prior to June 16, 1983, at which time, upon the payment of an additional sum of $1.00, the Plaintiff was to deliver it a title to the forklift. It also filed a counter complaint asking the court to require the Plaintiff to deliver it a title to the forklift.

Upon the trial of the case the chancellor found the issues in favor of the Defendant and counter complainant and held that it was entitled to the possession of the forklift.

The Plaintiff has appealed, presenting the following issues:

Did the Chancellor err in reaching a verdict which was clearly against the weight of evidence presented by the appellee?

Were the Chancellor's actions outside the scope of his authority when he rewrote the contract entered into between appellant and appellee?

The only reason we are able to agree with the Appellant's first issue is because the evidence offered by the Appellee is in violation of the parol evidence rule. In applying this rule on this appeal, we note that at no time during the trial of this case did counsel for the Appellant object to the evidence offered by the Appellee, nor does he raise the issue in his brief on appeal. However, since in this jurisdiction the parol evidence rule is not merely a rule of evidence but a rule of substantive law, we are bound by it on appeal whether the appellant objected on the trial of the case or fails to raise it as an issue on appeal. *Lazarov v. Klyce*, 195 Tenn. 27, 255 S.W.2d 11 (1953); *Deaver v. J.C. Mahan Motor Co.*, 163 Tenn. 429, 43 S.W.2d 199 (1931); *Maddox v. Webb Construction Co.*, 562 S.W.2d 198 (Tenn.1978). The most recent case in this jurisdiction affirming this rule is the case of *Maddox v. Webb Construction Co.*, *supra*, where the court said:

".... The parol evidence rule in Tennessee is not a rule of evidence merely, but is a rule of substantive law and no exception nor assignment of error is necessary to ensure its application. *Lazarov v. Klyce*, 195 Tenn. 27, 255 S.W.2d 11 (1953); *Deaver v. J.C. Mahan Motor Co.*, 163 Tenn. 429, 43 S.W.2d 199 (1931)." *Id.* 201.

In light of this rule, we consider the proof adduced at trial. The main issue between the parties was whether or not there was an agreement or understanding between the parties that the Defendant would have the right to purchase the forklift for $1.00 upon the expiration of the lease. There was no such provision in the lease but the Defendant endeavored to establish this contention by oral testimony. Mr. Dooly, president and general manager of the Defendant company and the one who negotiated the lease on behalf of the Defendant, testified there was such an agreement between him and Mr. Christenberry, president of the Plaintiff company and the one who negotiated the lease on behalf of the Plaintiff. Mr. Christenberry, on the other hand, testified there was no such agreement.

Mr. Dooly testified he executed the lease agreement on behalf of the Defendant and he read it before signing it and knew there was no option to buy provided for in the lease but "I assumed they would live up to their deal. That's exactly what I was relying on."

The Defendant also called a Mr. Guinn, who was a former employee of a subsidiary company of the Plaintiff. When asked what his understanding was about the agreement between the parties, he said:

"My understanding that the terms were that Conasauga would pay x amount of payments of a Thousand One Hundred Dollars ($1,100.00) a month, and at the end of that period the forklift would be his."

The Defendant also offered the testimony of a Mr. Swafford, who was an employee of the Defendant, who testified, without objection, about a conversation he had with Mr. Dooly shortly after his negotiations with Mr. Christenberry. He said:

".... I went back over to the office after a period of time, and he (Dooly) was talking about that they had made a sale, I believe, for Thirty-two Thousand Dollars ($32,000.00).

Q. On what kind of basis?

A. Straight outright sale, I believe the terms were something that he mentioned. Probably, I believe, a thousand Dollars ($1,000.00) a month with a dollar ($1.00) buy back at the end of the period."

The Defendant also offered the testimony of its accountant, Mr. Adams, who testified, without objection, that it was his understanding the transaction involved a lease purchase or a sale and not a straight lease; also, that on the books of the company, he treated it as a purchase rather than a lease.

Mr. Freide, a former office manager for the Plaintiff, also testified on behalf of the Defendant. It was his testimony that he understood the Defendant wanted to buy a

forklift and "that they were going to pay us x number of dollars per month for the forklift until they had finished paying for it."

There is also considerable testimony in the record which centers around two invoices which were given by the Plaintiff to the Defendant after the lease had been executed. The invoices are printed forms and except for the invoice numbers, the date of the invoices, and the amount of the invoices, they are identical. On the face of the invoices are two sets of brackets for the name of the customer. By the side of one set of brackets are the words "Sold To" and by the other set of brackets are the words "Shipped To." On each of the invoices the name of the Defendant company is typed in the bracket which says "Sold To." Also, on each of the invoices under the word "Terms" appears "Net Cash." Under "Customer Order No." appears "Verbal." Under "Description" appears the description of the forklift. The first invoice is dated October 9, 1980, and under "Amount" is shown $1,000.00, "Sales Tax" $60 and "Total Due" $1,060.00. The second invoice is dated February 19, 1981, and under "Amount" is listed $32,000.00 and "Total Due" $32,000. The first invoice was issued in connection with Defendant's first payment under the lease. However, there is a dispute as to why the second invoice was issued. The proof shows that on October 16, 1980, the Plaintiff assigned the lease on the forklift to the Dominion National Bank of Bristol as collateral for a loan. Thereafter the Defendant made its monthly payments on the lease to the bank instead of the Plaintiff. Mr. Christenberry testified that Mr. Dooly had requested the invoices to show that the Defendant was obligated only to the bank and that he did not have an obligation to both the Plaintiff and the bank. However, Mr. Dooly testified he requested the invoice to show the transaction was a purchase instead of a lease.

If we were able to consider the evidence in this case outside the umbrella of the parol evidence rule we would find it persuasive. However, the parol evidence rule "is not a rule of evidence in view of the fact that it has nothing to do with the probative value of one fact as persuasive of the probable existence of another fact; rather it is a rule of substantive law because it deals with the question of where the terms of a legal act are to be found." 30 Am.Jur.2d, *Evidence*, Sec. 1017, p. 153. Generally, it is said:

"The parol evidence rule is founded upon the principle that when the parties have discussed and agreed upon their obligations to each other and reduced those terms to writing, the writing, if clear and unambiguous, furnishes better and more definite evidence of what was undertaken by each party than the memory of man, and applies to exclude extrinsic utterances when it is sought to use those utterances for the purpose for which the writing was made, such writing superseding them as the legal act. The instrument itself is regarded as the best evidence of what the parties intended, and the writing still remains the best evidence of the understanding of the parties, even though, through a defect of form or by reason of some positive provision of law, it cannot have the effect intended for it. No other language is admissible to show what the parties meant or intended, for the reason that each has made the instrument the agreed test of his meaning and intention. The rule rests upon a rational foundation of experience and policy and is essential to the certainty and stability of written obligations. It is designed to permit a party to a written contract to protect himself against perjury, infirmity of memory, or the death of witnesses. It has been said that while its application may on occasion seem to work injustice, on the whole it works for good. On the other hand, the rule has been described as 'mysterious' and as 'the most discouraging subject in the whole field of evidence.' But whatever the courts or textwriters may think of the rule, it is now universally accepted and is prescribed in some states by statute." 30 Am.Jur. *Evidence*, Sec. 1016, p. 151.

In his determination of the case the chancellor placed great emphasis on the fact

that the two invoices said "Sold to Conasauga River Lumber Company." However,

"The parol evidence rule applies to exclude not merely oral utterances, but also informal writings other than the single and final written memorial. The real objection to the use of parol evidence is not that it is oral as distinguished from written, but that it is extrinsic, and tends to prove what is not a term of the contract." 30 Am.Jur.2d *supra*, p. 152.

Since the invoices are nothing more than "informal writings," we think they fall within the framework of the parol evidence rule and cannot be looked to to vary or contradict the terms of the lease.

The issues are found in favor of the Appellant. The decree of the chancellor is reversed and the case is remanded for such further proceedings as may be necessary in keeping with this opinion. The cost of this appeal is taxed to the Appellee.

PARROTT and GODDARD, JJ., concur.