**FIRST TENNESSEE BANK NATIONAL ASSOCIATION, Plaintiff-Appellee.**

v.

**John F. WILSON, Defendant-Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

Nov. 7, 1985.

Permission to Appeal Denied by
Supreme Court June 16, 1986.

John F. Weaver, McCord, Cockrill & Weaver, Knoxville, for defendant-appellant.

Gary S. Dawson, Jenkins & Jenkins, Knoxville, for plaintiff-appellee.

OPINION

SANDERS, Judge.

The Defendant appeals from a chancery decree in favor of the bank on a promissory note executed by him.

In 1981 the Plaintiff-Appellee, First Tennessee Bank, had acquired a considerable amount of coal mining equipment which had been pledged as collateral to various loans which the bank had made to coal mining concerns. The Defendant-Appellant, John F. Wilson, was engaged in the business of selling coal mining equipment and had considerable expertise in appraising its value. An arrangement was made whereby Mr. Wilson assisted the bank in selling most of the equipment, for which he was paid a commission on the sales.

In March, 1981, an agreement was reached between the bank and Mr. Wilson for Mr. Wilson to purchase the remaining items of equipment owned by the bank. There were twelve pieces of equipment involved and the purchase price was $91,500. It appears there was no cash payment involved. The bank executed a bill of sale for the equipment and Mr. Wilson executed a note to the bank for $91,500 bearing 11% interest and falling due 90 days after date. There followed a business pattern between Mr. Wilson and the bank where each time the note became due it would be renewed for an additional 90 days and each time Mr. Wilson sold a piece of the equipment he would make a payment on the principal balance of the note. He also kept the interest paid on the notes. This pattern was followed until December 20, 1982, when Mr. Wilson executed the note involved in this litigation. By that time the principal of the note had been reduced to $27,500. After the execution of the December 20 note some payments were made on interest but no payments were made on principal. The last payment made on prin-

cipal was on March 23, 1982, which was the last sale Mr. Wilson made of any of the machinery he had purchased from the bank.

In December, 1984, the bank filed suit on the note for $27,500 principal plus interest and attorney's fees.

For answer to the complaint the Defendant admitted he had executed the note but said the balance owed on the note was not due because at the time he purchased the equipment there was an agreement with the bank he would be obligated to make payments on the note only as sales of the equipment were made and no sales of the remaining equipment allocated to the payment of the balance of the note had been made. He also alleged the Plaintiff had materially and fraudulently altered the note after its execution by changing the date on the note and the obligation had been discharged pursuant to T.C.A. § 47–3–407.

Upon the trial of the case the chancellor found the issues in favor of the bank and entered judgment for principal and interest in the amount of $34,279.31.

The Defendant has appealed, saying the chancellor was in error in finding the principal balance of the note was due and owing and in failing to find the note had been discharged pursuant to T.C.A. § 47–3–407.

We cannot agree with the Appellant's insistence, and affirm.

There is a sharp conflict in the testimony of the Defendant and the witnesses for the bank as to the payments to be made on the note. It was the testimony of the Defendant that at the time he purchased the equipment it was his agreement with the bank that he would keep the interest on the note paid but he would be obligated to make payments on the principal only as he sold the equipment which he had purchased. It was the testimony of the witnesses for the bank that the agreement was the Defendant was to make payments on the principal of the original note as he made sales of the equipment but any renewals of the original note were subject to

negotiations at the time of maturity of the note.

The chancellor, in addressing this issue of the lawsuit, said:

"We listened very carefully to the testimony of Mr. Payne, the bank vice president who negotiated this transaction for the bank, and to Mr. Wilson. The substance of Mr. Payne's testimony is that payments were to be made on the note when equipment was sold, and that upon the note maturing, that is coming due, and upon the ninety days expiring, the taking of a renewal note would be looked at then. Mr. Wilson testified that payments for units were to be made out of each sale that he made and that that was the agreement reached with Mr. Payne. He was specifically asked with respect to the time period whether or not a time period was placed on when the principal was due.

"In listening to his testimony on this point, I think the substance of it was that no time period was placed on when he was obligated to make payments.

"Putting all of this testimony together, we think that there was a discussion that as units were sold, he would make principal payments without any specific discussion going to the matter of time. The only convincing evidence on the matter of time is that period set forth in the notes, which was the ninety-day period. Definitely in written form, then, time was made a subject of the agreement. The principal balance became due in ninety days under the original note. This, of course, was periodically extended as the notes were renewed.

"In determining the obligations of the parties, that which they put in writing is generally of more weight than that which they orally testified to. This is always true, but certainly in a case such as this, where we have some oral dispute as to what was said and intended. The fact that the parties put a specific written time for payment, that is ninety days, in the written paperwork, is most convincing.

■ "The Parol Evidence Rule has not been argued, but this case falls close to, if

not clearly within the Parol Evidence Rule as an attempt to change a written obligation by oral testimony. It is very difficult to accept the defendant's position that if equipment was not all sold or, in fact, if none of it had been sold, that the defendant would not have been obligated in any way on the note. If that was the case, it's hard to conceive why a note was executed, and why any time limit was put into the note."

We concur with the chancellor in his findings on this issue. However, we think the testimony of the Defendant is in violation of the parol evidence rule and cannot be considered.

In addressing the issue of the parol evidence rule where no objection was made in the trial court and no issue of it was raised on appeal, this court said, in *Tri-City Forklift v. Conasauga River Lumber Co.,* 700 S.W.2d 548 (1985):

"[I]n this jurisdiction the parol evidence rule is not merely a rule of evidence but a rule of substantive law, we are bound by it on appeal whether the appellant objected on the trial of the case or fails to raise it as an issue on appeal. *Lazarov v. Klyce,* 195 Tenn. 27, 255 S.W.2d 11 (1953); *Deaver v. J.C. Mahan Motor Co.,* 163 Tenn. 429, 43 S.W.2d 199 (1931); *Maddox v. Webb Construction Co.,* 562 S.W.2d 198 (Tenn.1978)."

■ This brings us to consideration of the Appellant's insistence that the note had been materially and fraudulently altered and had been discharged pursuant to T.C.A. § 47-3-407. The statute, as pertinent here, provides:

"ALTERATION.—(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in:

"(a) the number or relations of the parties; or

"(b) an incomplete instrument, by completing it otherwise than as authorized; or

"(c) the writing as signed, by adding to it or by removing any part of it.

"(2) As against any person other than a subsequent holder in due course

"(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense; ...."

The record shows that the note in issue originally had the date of January, 1983, typed on it and 27 penned in as the date. At a subsequent time "January" was struck through by pen and the date changed to December 20, 1982. The witnesses for the bank did not know who changed the date. However, the record affirmatively shows that December 20, 1982, was the maturity date of the note that was renewed by the existing note. In addressing this issue in his determination of the case, the chancellor said:

"The other defense raised by the defendant is that the original note has a date of January 27, 1983, and that someone, the bank apparently, changed that to December 20, 1982. It is rather obvious from all of the evidence, in particular the note history, that the date to which the note was changed was the maturity date of the preceding ninety-day note. From all the testimony of all parties, it was clearly the intent that Mr. Wilson be obligated to pay interest continuously, and that he not have a period of no interest payments. The evidence suggests no reason whatsoever why the January 27, 1983, date on the note was used other than that was the date perhaps that it was signed or typed.

"On the evidence before the Court, plaintiff would be entitled to a reformation of the note to show the date the parties both understood and intended Mr. Wilson's obligation to begin as of, to wit, December 20, 1982. That being the case, there is no showing of fraud or fraudulent alteration to the detriment of Mr. Wilson."

Again we concur with the chancellor. In the case of *Bank of Ripley v. Sadler,* 671 S.W.2d 454 (1984) our Supreme Court held that "under T.C.A. 47-3-407 the alteration by the holder must involve some type of

actual fraud, dishonesty or deceit to support a finding of 'fraudulent'". *Id.* 459.

The issues are found in favor of the Appellee. The decree of the chancellor is affirmed and the cost of this appeal is taxed to the Appellant.

PARROTT, P.J., and FRANKS, J., concur.