IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

GATES, DUNCAN AND VANCAMP
CO., a Partnership

    Plaintiff,

v.

RICHARD W. LEVATINO,

    Defendant/Cross Plaintiff,

v.

GATES, DUNCAN AND VANCAMP
CO., a Tennessee Partnership;

    Cross Defendant,   and

LOUIS "RICK" CHAFFIN and GLEN R.
PAGE, Individually and as partners of
GDVC Company

    Third-Party Defendants.

Shelby Chancery No. 102071-3
C.A. No. 02A01-9605-CH-00095

Hon. D. J. Alissandratos

**FILED**

**June 17, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

WILLIAM H. HALTOM, JR., Thomason, Hendrix, Harvey, Johnson & Mitchell,
Memphis, Attorney for Plaintiff/Cross-Defendant/Third-Party Defendants.

STANLEY J. KLINE, Memphis, Attorney for Defendant/Cross Plaintiff

*AFFIRMED*

Opinion filed:

---

TOMLIN, Sr. J.

    Gates, Duncan and Vancamp, a Tennessee partnership (hereafter "Plaintiff") filed suit in the Chancery Court of Shelby County against one of its partners, Richard W. Levantino (hereafter "Levatino" or "Defendant"), seeking injunctive relief, an accounting, compensatory and punitive damages, termination of the partnership, attorney fees and expenses and other relief in connection with plaintiff's attempt to protect the assets of the partnership. Subsequently the chancellor, at the request of both parties, entertained a motion for a declaratory judgment, which was ultimately resolved in favor of plaintiff. Thereafter the chancellor referred other pending matters to a Special Master, whose report to the chancellor was affirmed by him. In addition, the

chancellor awarded compensatory and punitive damages, along with attorney fees to plaintiff.

On appeal defendant has raised some thirty-three issues, which we believe are better stated by plaintiff in its brief. They are as follows:

(1) The chancellor erred in rendering declaratory judgment in favor of plaintiff

(2) The chancellor erred in overruling defendant's affirmative defenses to the partnership agreement.

(3) The chancellor erred in referring certain matters to the Special Master rather than retaining them himself.

(4) The chancellor erred in denying defendant's motion for additional compensation.

(5) The chancellor erred in holding that commissions on renewal insurance produced by him properly belonged to the partnership.

(6) The chancellor erred in dissolving the partnership based upon the wrongful conduct of the defendant.

(7) The chancellor erred in ordering certain funds to be placed in an escrow account pending determination of the rightful owner thereof.

(8) The chancellor erred in awarding attorney fees and expenses to plaintiff.

(9) The chancellor erred in awarding punitive damages to plaintiff.

For the reasons hereafter stated, we resolve each of these issues in favor of plaintiff.

Many of the basic facts are not in dispute. Plaintiff was a partnership formed for the purpose of selling insurance and insurance-related business products in Memphis. In March, 1988, defendant, along with Carl J. Gates, Louis J. "Rick" Chaffin, and Glen R. Page entered into a partnership agreement to carry out this insurance business under the partnership name "Gates, Duncan & Vancamp" ("GDVC"). Both parties agree that the partnership agreement was in full force and effect from March 1, 1988 to October 15, 1992, when the partnership was dissolved by order of the chancellor. Articles IV and V are

particularly relevant to this litigation.

> Article IV: It is agreed and understood that the right to sell to, or deal with, any of the present clientele of the partnership...belongs to the partnership and that each partner waives any right he may have claimed as to the ownership or as to the right to sell to or deal with any of the partnership's present or future clientele except as hereinafter provided upon dissolution.

> Article V: Each partner shall give to the partnership his entire time and consideration and shall not engage in any other business that would in any way work to the disadvantage of the partnership or its purposes. This shall not prohibit any partner from making outside investments as long as the time and effort devoted to such investments does not become so great as to detract from his effectiveness as a partner of this firm....

Following the execution of the partnership agreement, all the partners executed assignments, by which all commissions and fees from their former clients were assigned to the new partnership. Subsequently, one of the partners discovered some evidence that indicated that Levatino was conducting an outside insurance business in violation of the partnership agreement. However, when confronted, Levatino denied such conduct. Upon further investigation, some of the partners uncovered more evidence and again confronted Levatino, who this time admitted engaging in insurance-related business outside the scope of the partnership. This suit followed.

In addition to the relief sought by plaintiff, Levatino in a cross-complaint sought to have himself restored as an active partner and also sought a temporary restraining order that would prevent the other partners from interfering with his participation in the partnership.

Following a hearing the chancellor entered an order dissolving the partnership as of October 15, 1992. In addition he entered a temporary restraining order against Levatino, requiring him to conduct all insurance-related business through the partnership. The order did permit him to pursue any insurance clients with whom he had not dealt while a partner in GDVC. The chancellor referred several issues to the Master, for a full accounting of all

3

claims raised by the parties in the pleadings, as well as an accounting of any misappropriated insurance and insurance-related commissions by Levatino during the period the partnership agreement was in effect.

Thereafter, at the request of both parties, the chancellor held a hearing for declaratory judgment to ascertain the intent and meaning of the partnership agreement. At the conclusion of that hearing the chancellor entered an order in favor of plaintiff, specifically finding that under the clear and unambiguous language of the partnership agreement, Levatino was prohibited from conducting any insurance or insurance-related business outside the partnership agency during the period from March 1, 1988 through October 15, 1992. The court further ruled that any and all commissions and funds received by Levatino during the time the partnership was in effect should be paid over to plaintiff. The chancellor referred this issue to the Special Master for an accounting to ascertain the extent of insurance and/or insurance-related business Levatino had conducted outside the partnership during the partnership period, as well as an accounting by Levatino of what disposition had been made of those funds. In a subsequent hearing the chancellor held that renewal commissions received during the life of the partnership agreement on insurance previously written by Levatino were the sole property of GDVC.

Levatino thereafter filed a motion seeking compensation on the ground that the court had forced him to perform work for the partnership without being paid, stating that he was entitled to an award of $40,000.00. This issue was also referred to the Special Master.

As a result of several hearings the Special Master submitted his report to the chancellor for his consideration. The Master made the following findings:

> (1) Levatino was indebted to plaintiff in the amount of $88,612.72 for insurance business conducted outside the partnership agency. After deducting the value of Levatino's partnership interest from this amount, Levatino was indebted to plaintiff in the amount of $83,948.72.

4

(2) Levatino's cross-complaint against Chaffin and Page, two of the partners, asserting that they had engaged in wrongful conduct and thus breached the agreement, was without foundation.

(3) Levatino's conduct caused the dissolution of the partnership, pursuant to the provisions of T.C.A. § 61-1-137(6)(3)(B).

(4) Levatino was not entitled to any compensation from plaintiff based upon the allegation that he had been forced to work for the partnership.

The chancellor ratified and affirmed the report of the Special Master.  In addition the chancellor held that the evidence was clear and convincing that Levatino acted willfully, intentionally and deliberately in misappropriating funds that belonged to the plaintiff, thereby constituting intentional misconduct.  The chancellor awarded plaintiff punitive damages against Levatino in the amount of $20,000.00.  The chancellor also granted plaintiff's motion for attorney fees incurred by it for action taken in the defense of partnership assets, and ordered Levatino to pay attorney fees in the amount of $43,355.00, along with related expenses of $765.17.  This appeal followed.

I. Declaratory Judgment Issue.

In entering a declaratory judgment in favor of plaintiff, the chancellor held that Levatino was precluded from conducting any insurance-related business outside the partnership agency during the life of the partnership.

It is Levatino's contention that the logical construction of the language of the partnership agreement did not require him to conduct all insurance or insurance-related business solely and exclusively through the partnership.  He also contended that the chancellor was in error in denying the affirmative defenses raised by him.

The court's interpretation of the partnership agreement is not entitled to a presumption of correctness under T.R.A.P. 13(d), inasmuch as the interpretation of a contract involves a legal rather than a factual inquiry.  Hillsboro Plaza Enter. v. Moon, 860 S.W.2d 45, 47 (Tenn. App. 1993).  Our scope of review is de novo. T.R.A.P. 13(d).

5

It has long been established in this state that a contract must be interpreted and enforced according to its clear, plain and unambiguous terms. Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975). When the language of the contract is unambiguous and there is no claim or fraud or mistake, the court must give effect to the intention of the parties as expressed in the language used in the contract. Jennings v. Hayes, 787 S.W.2d 1, 2 (Tenn. App. 1990).

Moreover, the parties to a contract cannot create an ambiguity where none exists. Edwards v. Travelers Indemnity Co., 300 S.W.2d 615, 617-618 (Tenn. 1957). Parole evidence is inadmissable to contradict or vary the terms of a written contract, when the parties' intentions are readily ascertained from the contract as reduced in writing. McQuiddy Printing Co. v. Hirsig, 134 S.W.2d 197, 204 (Tenn. 1939). The law conclusively presumes that the parties to a contract understood its obligations, and evidence is not admissible to show that their understanding was in fact otherwise. Id. at 204.

After reviewing the terms of the partnership agreement this court is convinced that the clear and unambiguous language therein indicated that all partners were to devote their entire time and resources to the promotion of the partnership and were not to engage in any other business that would work to the disadvantage of the partnership. The record is also clear that Levatino's actions were in direct contradiction with this agreement. In no way does the agreement allow Levatino the freedom to establish his separate insurance business outside the partnership which in effect would compete with the partnership. In so doing Levatino was attempting to serve two masters, and by so doing he was totally wrong.

## II. Defendant's "Affirmative Defenses."

The contention by Levatino that the chancellor erred in denying the various affirmative defenses raised by him is without merit. The law is well established in this state that mutual assent is gathered by the language of the

6

contract rather than the unexpressed or undisclosed intentions of the parties. *See* <u>Sutton v. First National Bank of Crossville</u>, 620 S.W.2d 526, 530 (Tenn. App. 1981).

As for the affirmative defenses of estoppel, laches, waiver and failure to act with due diligence, the chancellor heard testimony from the various partners who testified that when they first suspected Levatino of being involved in inappropriate partnership behavior and confronted him, he denied any involvement in such affairs.  Almost a year later, when confronted again, he admitted engaging in insurance-related business outside the partnership.  Plaintiff's suit was filed two months later.  This issue is without merit.

### III. The References to the Special Master.

Levatino contends that the chancellor abdicated his role as trier of the lawsuit by ordering that the majority of the issues now before this court were to be determined by the Special Master.  This issue is without merit as well.  In <u>Archer v. Archer</u>, 907 S.W.2d 412, 415-16 (Tenn. App. 1995) this court stated that the main issues of a controversy and the principles on which these issues were to be adjudicated should be determined by the court, and that subordinate and incidental issues and the determination of ancillary facts are matters properly to be referred to a Special Master.

The reference to the Master was done only after the chancellor had decided the main issue in this case, which was the interpretation of the written partnership agreement.

### IV. Compensation for Work Allegedly Performed.

By this issue Levatino contends that the chancellor was in error in failing to award him compensation for "forced labor and services", which he contended was worth nearly $40,000.00 and that he was required to perform for the plaintiff by order of court.  At the hearing before the Master, Levatino failed to present any proof of the time worked on behalf of plaintiff, but rather contended that he was automatically entitled to certain commissions from insurance-related

business that he had brought to the partnership.  This claim was dismissed by the Special Master following motion of plaintiff and was affirmed by the chancellor.  Not only did Levatino fail to carry his burden of proof, he failed to present any proof at all.  This issue is without merit.

As to all of the above issues dealing with findings of the Master, a concurrent finding of a Master in a trial court is conclusive on appeal on this court, except where it is upon an issue not properly to be referred, where it is based upon an error of law or mixed question of fact and law, or where it is not supported by any material evidence.  Coates v. Thompson, 713 S.W.2d 83, 84 (Tenn. App. 1986).  None of these exceptions apply to the issues so presented to this court.  Hence we hold that these concurrent findings are binding upon us.

V. Automatic Renewal Premiums.

Levatino contends that the automatic renewal premiums should have been paid directly to him rather than being considered property of the partnership.  Automatic renewal premiums were revenues generated off the sales of insurance policies that took place before the formation of the partnership in March, 1988.  The language of the partnership agreement clearly states that upon the formation of the partnership, the clients of the partners became clients of the partnership.  The contention of Levatino violates both the spirit and language of the partnership agreement.  We resolve this issue in favor of plaintiff.

VI. Dissolution of the Partnership.

Next, Levatino contends that the trial court erred in finding that his wrongful conduct violated the partnership agreement, thereby causing the dissolution of the partnership.  Levatino also contests the method employed by the court in valuing the partnership and in ascertaining the partnership damages.  Following our scope of review pursuant to T.R.A.P. 13(d), we are of the opinion that the evidence does not preponderate against the finding of the chancellor that the misconduct of Levatino caused the dissolution of the

8

partnership.

As for the valuation of Levatino's interest in the partnership and the determination of compensatory damages due the partnership by Levatino, once again we point out that these results were reached by the Master and concurred in by the chancellor. There was no error in law and there was material evidence to support these findings. Accordingly, these issues are resolved in favor of plaintiff.

## VII. Temporary Injunction.

By this issue Levatino contends that the trial court was in error in issuing a temporary injunction that required that all funds connected with the commissions generated by Levatino during the existence of the partnership be placed in an escrow account until a proper determination could be made of who rightfully owned such funds. It appears without contradiction that the purpose of this injunction was to create a separate account for the funds in dispute. At the time this was done, the court had not issued its declaratory judgment ruling. It is readily apparent that the court was trying to protect the interests of both parties by properly separating and identifying the disputed funds. This issue is without merit.

## VIII. Attorney Fees and Expenses.

Levatino here asserts that the trial court was in error in awarding plaintiff attorney fees and expenses in this litigation. The law is well established in this state that surviving partners are entitled to attorney fees for defending partnership assets. Bird v. Collette, 168 S.W.2d 797, 800 (Tenn. App. 1942); Evans v. Boggs, 245 S.W.2d 641, 656-657 (Tenn. App. 1951).

Plaintiff, the partnership in this case, brought this suit in an attempt to preserve the assets of the partnership and to prevent any further diversion of funds from the partnership to the personal use of Levatino. There was more than adequate proof presented that the amount of the fees being requested were fair and reasonable. We resolve this issue in favor of plaintiff.

IX.  Punitive Damages.

Lastly, Levatino challenges the award of punitive damages to plaintiff in the amount of $20,000.00.  It has been established in this state that a court may award punitive damages if it finds by clear and convincing evidence that the opposing party has engaged in intentional and fraudulent misconduct.  Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 900 (Tenn. 1992).

The record in this case is replete with evidence presented by plaintiff that Levatino engaged in a deliberate, willful and intentional course of conduct in misappropriating over $80,000.00.  Examples of this evidence include Levatino's directing the payment of certain insurance premiums to his home rather than to plaintiff's business address and lying to the partners about the sequestering of assets of the partnership in an attempt to avoid being caught.  Only after Levatino was presented with overwhelming evidence did he admit to some of the things of which he was accused.  It is apparent that the chancellor found Levatino's story unbelievable.  This issue is also without merit.

Accordingly, the decree of the chancellor is affirmed in all respects.  Costs in this cause on appeal are taxed to Levatino, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.


_____
CRAWFORD, P.J. S.W.                    (CONCURS)


_____
LILLARD, J.                    (CONCURS)

10