IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2003 Session

## AMBROSE ASSOCIATES, v. W. AUSTIN MUSSELMAN, JR.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 02-1231-II    Hon. Carol McCoy, Chancellor**

─────────────────

**No. M2002-02780-COA-R3-CV - Filed October 2, 2003**

─────────────────

Action to collect rent owed by surety was dismissed by the Trial Court.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which  D. MICHAEL SWINEY, J., joined, and HOUSTON M. GODDARD, P.J., not participating.

Todd E. Panther, Nashville, Tennessee, for Appellant.

John R. Wingo, Nashville, Tennessee, for Appellee.

**OPINION**

Plaintiff sued defendant alleging that monies were owing under a lease agreement and that defendant was liable based upon a Surety Agreement signed by defendant, which guaranteed "full, prompt, and faithful performance of the lease by Mountain Headwater".  Plaintiff attached the lease agreement between itself and Mountain Headwaters.  The Surety Agreement signed by defendant was also attached, and it provides that defendant will be surety for the "full, prompt and faithful performance by Tenant, its successors and assigns, of the Lease and all of the terms, covenants and conditions thereof, including, but not limited to, the payment by Tenant of the rental and all other sums to become due under the Lease."  The Assignment of Lease was attached, and states that Mountain Headwaters assigned its interest in the Lease to Stephanie Wright as of August 27, 1999.  A Tenant's Guaranty Agreement was executed on that same date, and defendant agreed to act as guarantor for the lease, and stated that he would cure any default, but that he would be

released at the end of the initial lease term (February 2002).

Defendant in his Answer denied that the lease was in default, stating that in October 2000, plaintiff and Ms. Wright executed an amendment to the lease which reduced the rent due thereunder, and partially released Defendant as a surety. Defendant alleged that the reduced amount of rent was timely paid from October 2000 through the end of the initial lease term in February 2002. Defendant attached Lease Amendment One, which was executed October 17, 2000, which states that commencing October 1, 2000, the rent will be reduced to $2,728.59 per month. Defendant also attached a letter received from plaintiff's attorney, which states that Wright paid $2,728.59 per month from October 1, 2000 through February 1, 2002, but the letter claims that this was not the full amount of rent due under the lease.

An additional attachment was a letter and second lease amendment, which states that lessor and lessee "mistakenly implied" in Lease Amendment One that the rent was being reduced, but it was actually a forbearance to the lessee such that the full amount of rent would not be sought from her, but could be sought from defendant.

Defendant filed a Motion for Judgment on the Pleadings, asserting that plaintiff had failed to state a cause of action against him. Responding to the Motion, the court found that defendant signed a document obligating him as a surety for all debts owed to plaintiff by Mountain. The court found the lease was assigned to Wright on August 25, 1999, with plaintiff's consent, and that defendant signed a guaranty agreement for all debts owed to plaintiff by Wright.

The Court further found that on October 17, 2000, the Lease was amended pursuant to a document titled Lease Amendment One, which was executed by Wright and the plaintiff, and the rent was reduced thereby. The Court held that Wright paid the reduced amount of rent from October 2000 through February 2002, and that Wright, through her attorney-in-fact, and plaintiff executed a document on February 8, 2002 titled Lease Amendment Two, and that document purported to clarify Lease Amendment One by showing that the parties "intent" was to create a forbearance for Wright only. The Court found that Lease Amendment Two assigned the lease to a new tenant for the reduced amount of rent, and that Wright retained her security deposit. The Court concluded that Lease Amendment One was a "clear and unambiguous modification of the rental obligations due under the Lease, and Lease Amendment One, as a matter of law, reduced the rent owed by Wright pursuant to the Lease to $2,728.59 per month." The Court said the parol evidence rule barred the use of extrinsic evidence "including but not limited to Lease Amendment Two" to explain or clarify the clear and unambiguous terms of Lease Amendment One. The Court said that Lease Amendment Two was not an amendment to the Lease, but was rather "an attempt, in violation of the parol evidence rule, to create an antecedent debt "by clarifying and explaining the unambiguous provisions of Lease Amendment One". Since Wright paid the stated monthly obligations through the end of the term, the Court held that defendant had no obligation to pay plaintiff for the claimed rent and dismissed the case.

Plaintiff argues that the Trial Court erred in failing to hold defendant liable for the

full amount of the rent, because Lease Amendment One was not a reduction in rent, but a forbearance, and because the surety agreement states that no forbearance to the tenant will discharge the surety.

Forbearance is defined as "giving of further time for repayment of obligation or agreement not to enforce claim at its due date . . . delay in enforcing a legal right."  Black's Law Dictionary, 6th Ed., 1990.  This position is contradicted by the clear language of Lease Amendment One, which states that the Lease is being "amended", and "Commencing October 1, 2000, the rental rate shall be $2,728.59 per month."  There is no qualifying language regarding any type of delay in the collection of the previous amount of rent, or any other such terms which would indicate a forbearance.  The Amendment simply says that the rent is being reduced, and the lease amended.

As we have often recognized, "a contract must be interpreted and enforced according to its clear, plain and unambiguous terms.  When the language of the contract is unambiguous and there is no claim of fraud or mistake, the court must give effect to the intention of the parties as expressed in the language used in the contract." *Gates, Duncan & Vancamp Co. v. Levatino*, 962 S.W.2d 21, 25 (Tenn. Ct. App. 1997) (citations omitted).  The Trial Court properly found, the language of Lease Amendment One is clear and unambiguous, and since the rent was reduced, and the reduced amount of rent was timely paid, plaintiff has no valid claim against defendant.  As the Supreme Court has explained, "a release of the principal also releases the surety to the extent that the principal is released.  The surety is not released, however, if the creditor in the release reserves his rights against the surety, or if the surety consents to remain liable notwithstanding release of the principal." *Hickory Springs Mfg. Co., Inc. v. Evans*, 541 S.W.2d 97, 99 (Tenn. 1976).  Plaintiff did not reserve his rights against the surety in Lease Amendment One, and the surety agreement does not say that the surety agreed to remain liable even if the principal was released.  Rather, the agreement states that the landlord and tenant can amend or modify the lease without notice to the surety, and that any such action by the tenant will be binding on the surety and the "Surety shall continue as Surety with respect to the Lease as so modified, extended, amended or otherwise affected."  The Agreement binds the surety to guarantee the lease as amended by the tenant and landlord, which amendment reduced the amount of the rent, and there is no dispute that the lessee paid that amount of rent.

Plaintiff argues that Lease Amendment One was explained by a second amendment which was executed by the landlord and tenant after the lease term had expired.  The second amendment purported to explain that Lease Amendment One was really just a forbearance, and was not intended to reduce the rent obligation.  As we have previously recognized, however, "parties to a contract cannot create an ambiguity where none exists.  Parole evidence is inadmissible to contradict or vary the terms of a written contract, when the parties' intentions are readily ascertained from the contract.  The law conclusively presumes that the parties to a contract understood its obligations, and evidence is not admissible to show that their understanding was in fact otherwise." *Gates, Duncan & Vancamp Co.*; *see also BVT Lebanon Shopping Center, Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132 (Tenn. 2001) ("determination of the parties' intent in a written contract is a question of law resolved by examining the four corners of the contract and the circumstances at the

time of contracting").

As we have said, "the parol evidence rule is founded upon the principle that when the parties have discussed and agreed upon their obligations to each other and reduced those terms to writing, the writing, if clear and unambiguous, furnishes better and more definite evidence of what was undertaken by each party than the memory of man, . . .. No other language is admissible to show what the parties meant or intended, for the reason that each has made the instrument the agreed test of his meaning and intention." *Tri-Cities Forklift Co., Inc. v. Conasauga River Lumber Co.*, 700 S.W.2d 548 (Tenn. Ct. App. 1985). Moreover, the actions of the parties to the Lease belie their assertion that the reduction was a forbearance, as their Lease Amendment Two states the parties agree "assignee shall at execution of this Agreement pay to lessee an amount of $3,758.92 (three thousand, seven hundred, fifty-eight dollars and ninety-two cents) as reimbursement of the security deposit that lessor has in possession."

Finally, appellant argues that defendant cannot rely on the parol evidence rule, because he was not a party to Lease Amendment One, and the parol evidence rule only applies in litigation between "parties and their privies." Defendant is a privy, however, through his execution of the surety agreements. Defendant is Wright's surety, and his liability derives from her liability. Privity is defined as "Derivative interest founded on, or growing out of, contract, connection, or bond of union between parties; mutuality of interest." Black's Law Dictionary, 6th Ed., 1990. Clearly, a surety relationship is one which creates privity. *See Tanner v. Mobley*, 354 S.W.2d 446 (Tenn. 1962); *Daniels v. Combustion Engineering, Inc.*, 583 S.W.2d 768 (Tenn. Ct. App. 1978). Since defendant is in privity with Wright, he may properly assert the parol evidence rule regarding the agreement to the same extent that Wright could.

We affirm the Judgment of the Trial Court for the foregoing reasons, and assess the cost of the appeal to appellant, Ambrose and Associates.

_____
HERSCHEL PICKENS FRANKS, J.