IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2011 Session

# WILLIAM BRIAN TAYLOR v. THE DEL-NAT TIRE CORPORATION

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000887-09      Jerry Stokes, Judge**

---

**No. W2010-01426-COA-R3-CV - Filed June 13, 2011**

---

Plaintiff sued his former employer, claiming that he was entitled to unpaid overtime pay and reimbursement for the cost of educational courses he took while employed by the employer. Following a bench trial, the trial court awarded the plaintiff overtime pay, reimbursement for the courses, and attorney's fees. We reverse the decision of the circuit court and vacate the award.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Award Vacated**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Cheryl Rumage Estes, Margaret F. Cooper, Memphis, Tennessee, for the appellant, The Del-Nat Tire Corporation

James W. Hodges, Jr.,, Memphis, Tennessee, for the appellee, William Brian Taylor

## OPINION

### I. FACTS & PROCEDURAL HISTORY

William Brian Taylor ("Plaintiff") was employed by Del-Nat Tire Corporation ("Employer") as an Information Technology Specialist from May of 2006 to June of 2007, when Plaintiff resigned to accept a position with another company. In June of 2008, Plaintiff filed a civil warrant in general sessions court against Employer, alleging breach of contract and failure to pay wages. After the general sessions court ruled in favor of Employer, Plaintiff appealed to circuit court. A bench trial was held on March 8, 2010.

During Plaintiff's employment at Employer, he was paid an initial salary of $40,000, and he later received a raise that increased his salary to $43,000. However, he argued that the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), required that he receive additional overtime pay for certain work, and he claimed that Employer had failed to pay him approximately $7,149 in overtime pay that he was owed. Plaintiff also claimed that Employer owed him $9,500 plus interest as reimbursement for the cost of educational courses that he had taken during his employment.

The circuit court ultimately awarded Plaintiff $5,343 for overtime pay and $9,000 for reimbursement for the educational courses, in addition to attorney's fees in the amount of $6,187.50. Employer filed a motion to alter or amend or for a new trial, which was denied. Employer then filed a timely notice of appeal to this Court.

### II. ISSUES PRESENTED

Employer presents the following issues, slightly restated, for review on appeal:

1. Whether Plaintiff was entitled to overtime pay pursuant to the Fair Labor Standards Act;
2. Whether Employer breached its employment agreement with Plaintiff by failing to reimburse him for the cost of courses taken; and
3. Whether the trial court erred in denying Employer's motion to alter or amend or for a new trial.

For the following reasons, we reverse the decision of the circuit court.

### III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2010); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). "The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court." *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

### IV. DISCUSSION

#### A. The Overtime Pay

On appeal, Employer argues that the trial court erred in awarding Plaintiff overtime pay for several reasons. First, Employer asserts that Plaintiff's position as an IT Specialist was not subject to the overtime pay requirements set forth in the Fair Labor Standards Act, as it constituted an exempt administrative position as described in 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.200. Employer further argues that even if Plaintiff's position was not exempt from the overtime pay requirements, Plaintiff failed to prove that he was entitled to overtime pay because he did not demonstrate that he worked more than forty hours in any given week. And finally, Employer argues that the trial court erred in admitting and considering certain evidence from an investigation conducted by the Department of Labor.

Under certain circumstances, the FLSA requires employers to pay certain employees at least one and one-half times their regular rate of compensation when they are employed for "a workweek longer than forty hours." 29 U.S.C. § 207(1). "The Act does not generally require, however, that an employee be paid overtime compensation for hours in excess of eight per day, or for work on Saturdays, Sundays, holidays or regular days of rest." 29 C.F.R. § 778.102. In other words, the determinative factor is the cumulative number of hours worked in a workweek, not the number of hours worked in any given day, nor the day when the work occurs. *See, e.g.*, *Briggs v. Payless Cashways*, No. 91-2010 HA, 1993 WL 273361, at *1 (W.D. Tenn. Feb. 10, 1993) (finding no entitlement to overtime pay for

working a nine-hour day). If no more than forty hours are actually worked in the workweek, overtime compensation need not be paid. 29 C.F.R. § 778.102.

Here, Employer asserts that Plaintiff failed to demonstrate that he ever worked more than forty hours in any given workweek. Plaintiff, of course, disputes this assertion. Thus, we will set forth the evidence presented by the parties that we deem relevant to this issue.

At trial, the job description for Plaintiff's position as an IT Specialist was entered into evidence, and it provided that an IT Specialist would be required to "[b]e available in early a.m. hours M-F and work nights and/or weekends as needed." Plaintiff testified that during the first few months of his employment, he worked from 8:00 a.m. to 5:00 p.m. However, he did not state how many days per week he worked those hours. Plaintiff testified that beginning November 1, 2006, he was required to do more maintenance on the servers and take direct calls from the warehouse "after hours." He testified that he had to remotely log in to the servers to perform server maintenance every morning from approximately 5:30 to 6:00 a.m. in addition to weekend maintenance, and that these tasks totaled about four hours per week. Plaintiff testified that he would also get calls in the evening if there was a problem with the server and that this would occur separate and apart from his "regular eight-hour day." Plaintiff testified that he was required to work seventeen hours on Labor Day weekend, four hours on Mother's Day, and two hours on Father's Day due to problems with the server. Plaintiff further testified that he worked approximately 23 hours on a certain Friday and Saturday completing a mandatory inventory. Finally, he testified that he was required to perform the early morning server maintenance and respond to a trouble call during his four-day vacation in December 2006. In sum, Plaintiff claimed that he was entitled to overtime pay for approximately 210 hours of work, for a total award of $6,486. On cross-examination, Plaintiff was asked why he was claiming that he was entitled to overtime pay for working on Mother's Day and Father's Day, to which he responded, "I'm claiming those days because they're Sundays. And Sunday is not a regular workday."

Plaintiff also presented the testimony of one of Employer's other employees, who testified that he called Plaintiff on one occasion due to a server problem, and that Plaintiff worked for a "couple of minutes." Plaintiff's wife also testified about Plaintiff's work. She testified that Plaintiff worked on the early morning server maintenance for about half an hour "on Tuesday through Friday," and that on the weekends he would run more server maintenance for about an hour each day. She said he would receive telephone calls about problems one to two times a week, and she also discussed his work on Mother's Day, Father's Day, Labor Day, during his vacation, and regarding the inventory.

Employer presented the testimony of Ms. Dell Stone, its Senior Administrative Manager, and she testified that she personally never required Plaintiff to work over forty

hours in a workweek.

The trial court ultimately concluded that Plaintiff worked 173 hours "over forty (40) hours" during his employment at Employer, and that he was therefore entitled to $5,343.10 in overtime pay. Nevertheless, considering all the evidence presented, we find that Plaintiff failed to prove that he ever worked more than forty hours in a workweek. Plaintiff never testified or presented evidence regarding the total cumulative number of hours that he worked in any week. He did testify that he worked more than eight hours on some days, and he proved that he worked on certain holidays and weekends. However, he failed to demonstrate that he also worked a regular work schedule of five eight-hour workdays in addition to those instances. There is simply a gap in Plaintiff's proof that we cannot fill by implication.

A similar situation occurred in *Acosta v. Yale Club of New York City*, No. 94 CIV. 0888(KTD), 1995 WL 600873, at *3-4 (S.D. N.Y. Oct. 12, 1995), where waiters alleged that they were owed overtime pay pursuant to the FLSA:

> To recover for overtime wages under the FLSA[,] Plaintiffs must allege that management employed the waiters "for a workweek longer than forty hours" without overtime compensation. 29 U.S.C. § 207(a)(1). Plaintiffs cite various instances when they worked several extra hours in a given day; however, they do not offer any examples of situations when management employed them for more than 40 hours in a week without paying them overtime.
> "The Act does not generally require, however, that an employee be paid overtime compensation for hours in excess of eight per day, or for work on Saturdays, Sundays, holidays or regular days of rest. If no more than the maximum number of hours prescribed in the Act are actually worked in the workweek, overtime compensation pursuant to Section 7(a) need not be paid." 29 C.F.R. 778.102.
> Plaintiffs' allegations amount to nothing more than a hodgepodge of individual instances where waiters were not paid for extra hours worked on a given day. Such allegations do not adequately state a claim under Section 7 of the FLSA.

We likewise conclude that Plaintiff's evidence in this case failed to address the necessary issue of whether he worked more than forty hours in a workweek. As such, the evidence preponderates against the trial court's finding regarding the amount of overtime worked by Plaintiff, and we reverse its award of overtime pay to Plaintiff.

Employer argues on appeal that if the trial court's decision regarding overtime pay is reversed, then we must necessarily reverse the attorney's fee award, as it was based upon a provision of the FLSA that provides for an award of attorney's fees to an employee who successfully brings an action for overtime wages. The record supports Employer's assertion. At the conclusion of the trial, counsel for Plaintiff argued that Plaintiff was entitled to be awarded the attorney's fees he incurred in pursuing the issue of overtime pay "according to the statute." Because we reverse the trial court's award of overtime pay, we also hereby reverse the award of attorney's fees. The parties' other issues regarding overtime pay are pretermitted.

## B. *Reimbursement for the Educational Courses*

As noted above, Plaintiff also argued at trial that Employer owed him $9,500 plus interest for reimbursement for the cost of educational courses that he took while employed with Employer. The trial court ultimately awarded Plaintiff $9,000 as reimbursement for the courses. Employer argues on appeal that Plaintiff was not required to take such courses, but even if he was, he did not follow the procedures set forth in its employee handbook for receiving reimbursement.

As support for his contention that he was entitled to reimbursement, Plaintiff relied upon a letter offer of employment prepared by Employer and another document entitled "IT Department Learning Plan." The letter extending the offer of employment to Plaintiff stated that his annual starting salary as an IT Specialist would be $40,000, and then it stated, "Also your Learning Plan is part of our offer, as you demonstrate the competency to complete those tasks you will receive a $500.00 salary increase." The complete text of the Learning Plan document provides:

> IT Department Learning Plan
>
> Radio Beacon
>     Shipping Process
>         Picking, Checking and Loading
>     Receiving Process
>         Receiving and Put Away
>     Replenishment
>         Let Down Fill Bins and Direct Move
>     Inner Working of RB Console
>         End of Line, Labels 3, Starting and Stopping Services and
>         Reindex Server

Great Plains[1]
> Entering Orders
> > Process of Order Entry, Backorder and Invoice
> Entering Purchase Orders
> > ASN, Container Entry and Receiving
> Import Manager
> > Process, File Management and Import Structure

Servers
> Exchange
> Active Directory
> Manage Reports Server
> Sharepoint

Wireless Network
> Handhelds
> Access Points
> Switches
> Bridges

Database
> Maintenance
> Queries
> Writing Reports via Visual Studio

Plaintiff testified at trial that he understood the Learning Plan to be part of his job requirements, and he interpreted that to mean that he had to obtain training on the specific features listed in the Learning Plan, "so [he] started taking actions to get the training that was required." Plaintiff said that he did some research and learned that he could take training courses on exchange servers, active directory, database management, and other subjects at New Horizons Computer Learning Center. He explained that Employer did not offer in-house training of that nature. When asked whether he was required to go elsewhere to get this training, Plaintiff responded, "As far as I was concerned, yes, sir. Or as far as I knew, yes, sir." Plaintiff testified that the New Horizons courses normally cost about $3,000 each, but he signed up for a course package whereby he could take several courses for a total cost of $9,500.

---

[1] We note that the job description for Plaintiff's position listed under "Essential Functions and Responsibilities," among other things, "Great Plains Support, Maintenance and Upgrades" and "Radio Beacon Support, Maintenance and Upgrades."

Plaintiff said that it was his understanding based upon the offer made by Employer and the Learning Plan that he would receive reimbursement for the cost of the courses. Plaintiff said he told his direct supervisor that he was going to be taking classes at New Horizons, and that his supervisor did not object. Plaintiff said that his supervisor indicated that those classes would meet the requirements. Plaintiff said he also told his supervisor about the special package deal that he obtained and that his supervisor never told him that he would *not* be reimbursed for the cost of the courses. However, when asked specifically whether his direct supervisor ever told him that he *would* be reimbursed for the courses, Plaintiff responded, "I understood that the company was going to pay them because it was part of my – my learning plan."

Plaintiff testified that he completed three of the courses included in the package deal before he resigned in June of 2007, that he took at least one of the courses after resigning, and that he had not yet completed the rest of the courses by the time of trial.

Ms. Stone, the Senior Administrative Manager for Employer, testified that Plaintiff was never required to take any outside learning courses while he was employed by Employer. She conceded that she was not familiar with the "IT Department Learning Plan" document presented by Plaintiff, but she said that if Plaintiff's supervisor had required him to take any courses, the supervisor would have informed her of the requirement. Ms. Stone testified that Employer did sometimes require employees to take courses at New Horizons, but she said the typical procedure in that situation was that the employee's manager would contact her, and she would schedule the class and pay for it directly with the corporate credit card. She acknowledged that there had been rare instances in the past in which employees paid for classes directly, with prior approval, and were later reimbursed. Ms. Stone also pointed out that Employer's employee handbook addressed the company's "Education Assistance Program," which provided "financial assistance to employees pursuing, on their own initiative, approved outside educational courses which are related to present or potential future job assignments." However, under the plan, all educational opportunities required advance approval by the employee's supervisor and human resources representative, and expenses would only be reimbursed up to $2,500 per student per calendar year. In the event that the employee would be seeking reimbursement under the program, the employee had to obtain approval from the supervisor and human resources manager prior to enrollment and provide evidence of completion of the course thereafter. In addition, any employee who voluntarily terminated his or her employment within 18 months of receiving reimbursement under the program was required to return the money to the company. Ms. Stone testified that Plaintiff did not obtain the necessary prior approval or provide proof of completion of the courses, and she pointed out that his costs exceeded the $2,500 annual limit and that he quit his job shortly after taking the courses. Thus, she stated that Plaintiff would not be entitled to reimbursement in any event.

The trial court's final order states that "it appears from [the] letter from defendant Del-Nat Tire Corporation, there was a training requirement as a component of the Plaintiff's employment with the defendant." As such, the trial court awarded Plaintiff $9,000 for reimbursement for the courses he took while employed at Employer. Again, we must respectfully disagree with the trial court's conclusion. The letter offer did state that the Learning Plan was part of the offer, but it did not mention any required training courses, and more importantly, it did not state that Employer would reimburse Plaintiff for the cost of such courses. The letter offer simply stated that Plaintiff would receive a $500 salary increase as he demonstrated the competency to complete the tasks listed in the Learning Plan. The Learning Plan itself appears to be a list of concepts and subjects that would be relevant to the IT Specialist's responsibilities, but it is similarly silent with regard to a requirement of training courses or an obligation to pay for them. It is important to note that Plaintiff never testified that he was told by his direct supervisor or anyone else that he would be reimbursed for the cost of the training courses. He simply said that he understood the offer and Learning Plan to mean that he would be reimbursed for the cost of the training courses, and that he was never told that he would *not* be reimbursed. At trial, Plaintiff's counsel made the following argument, which we find particularly revealing as to the basis of his claim for reimbursement:

> And even though the offer doesn't spell out that – that it's to be reimbursed, I think by the mere fact that it is a company learning plan and that it is submitted to him and he is expected to undertake to do it, it certainly should be reimbursed. And – and by the contract, the terms of the contract, it should be reimbursed.

The problem with counsel's argument is that there are no contract terms that require Employer to pay for the cost of any training courses. Regardless of what Plaintiff believed would be a fair or appropriate arrangement, there is simply nothing in the record to indicate an agreement on the part of Employer regarding reimbursement. "The law is well established in this state that mutual assent is gathered by the language of the contract rather than the unexpressed or undisclosed intentions of the parties." *Gates, Duncan & Vancamp Co. v. Levatino*, 962 S.W.2d 21, 25 (Tenn. Ct. App. 1997) (citing *Sutton v. First National Bank of Crossville*, 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981)). Finding no basis to impose an obligation of reimbursement on Employer, we reverse the trial court's award of $9,000 to Plaintiff.

## V.   CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court and vacate the award.  Costs of this appeal are taxed to the appellee, William Brian Taylor, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.